THORNAL, Justice.
Appellants, Fallís and Wineberg, as taxpayers, seek reversal of a decree validating an issue of refunding and improvement revenue certificates.
We must decide whether the appellee city met the requirements of its charter and other applicable statutes in the proceedings by which it authorized the issuance of the certificates.
By ordinance, the City of North Miami authorized the issuance of so-called “refunding and improvement revenue certificates” in the amount of $400,000. The proceeds of the sale of the certificates are to be used to refund previously issued revenue certificates in the amount of $206,000, and to purchase trucks and acquire land for a garbage disposal system. The sole income pledged to the payment of the revenue certificates was one-half of the cigarette tax collected pursuant to an ordinance adopted in accord with Chapter 210, Florida Statutes, F.S.A.
Appellants Fallís and Wineberg, as taxpayers, appeared in opposition to the validation of the certificates. They contend that the city failed to meet the requirements of its charter in adopting the authorizing ordinance and that under the charter the issuance of the certificates should have been approved by a referendum as a condition to their validity.
The appellee contends that no referendum was necessary and that the requirements of the charter were substantially met. The Chancellor, after hearing all of the testimony, entered a decree validating the certificates. We are now requested to reverse this decree insofar as the improvement certificates are concerned. No attack is lev-elled against the refunding program.
The charter of the City of North Miami was adopted pursuant to Chapter 166, Florida Statutes, F.S.A., and was approved by Chapter 29318, Sp.Laws of Florida 1953. *884 State v. City of North Miami, Florida, 1954, 73 So.2d 899.
Appellants place their principal reliance for reversal on the provisions of Section 65 of the city charter, which reads as follows:
“Section 65. Referendum on Bond Ordinance. All bonds or other evidence of indebtedness issued hereunder shall be subject to referendum unless the bonds are authorized solely for a capital purpose made necessary as the result of lire, flood, or other disaster, or are revenue bonds which are payable exclusively from the revenues to be derived from the operation of property which the city proposes to acquire, or as the result of an activity in which the city proposes to engage.”
A casual examination of the quoted provision might suggest merit in appellants’ position. However, upon closer scrutiny, it will be seen that all that this section provides is that the described evidences of indebtedness “shall be subject to referendum.” The provision is not mandatory; it is obviously intended to permit a referendum on a bond ordinance when such is demanded in accordance with other provisions of the municipal charter. Cf. Opinions in City of Lake Worth v. State, Fla.1959, 111 So.2d 433.
The municipal charter contains no provision which specifically requires an election for the purpose of approving these securities. Article XVII of the charter deals with the subject of “Initiative and Referendum.” Section 174 of that article, entitled “Power of Referendum,” provides that “The electors shall have power to approve or reject at the polls any ordinance passed by the council * * * except as provided in Section 65, such power being known as the referendum.” When we read Section 65 and Section 174 of the charter in pari materia, it becomes clear that the provisions of Section 65 merely authorize a referendum on certain bond matters when such referendum is requested by the electors under Article XVII of the charter. The plaintiffs’ contention that the approving vote of the electorate was an essential precedent to the validity of the securities is without merit.
The appellee city contends that it is proceeding under Section 210.03, Florida Statutes, F.S.A. by pledging a part of the proceeds of the cigarette taxes to liquidate the indebtedness. We have held on numerous occasions that cigarette tax income is available for this purpose when the public improvement is one authorized by Chapter 210. Welker v. State, Fla.1957, 93 So.2d 591; State v. Town of DeFuniak Springs, Fla. 1956, 91 So.2d 169; State v. City of North Miami, Fla.1956, 89 So.2d 8. Section 210.03, supra, contains no procedural provisions delineating the steps to be taken in making the pledge. However, our examination of the instant record suggests that there has been substantial compliance with those aspects of the city charter essential to the ultimate validity of the securities.
The record submitted to the chancellor reveals that the municipality contemplates spending approximately $150,000 of the proceeds for a site to accommodate a garbage disposal plant. It contemplates spending approximately $44,000 for garbage trucks and equipment. The record further reflects a contract with a private garbage disposal company whereby the latter agrees to construct a plant and handle the disposal of the municipal garbage for a fixed fee per ton. The contract contemplates that the cost of the construction of the plant will in this fashion be liquidated by the end of twenty years. At that time the title to the entire facility will revert to the city, free and clear of any claim by the private concern. All of these matters were before the trial judge and are in the record here.
We do not overlook various provisions of the municipal charter with regard to the content of the bond ordinance in connection with the initial disbursement for the establishment of the plant, as well as var *885 ious budgetary findings that should have been included in the ordinance. We have the view, however, that the record over all reflects compliance with the essential aspects of the charter and the failure to meet other directory provisions would not affect the validity of the bonds.
The decree of validation is affirmed.
It is so ordered.
TERRELL, Acting Chief Justice and HOBSON, DREW and O’CONNELL, JJ., concur.