DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ORTHOPEDIC SPECIALISTS,** as Assignee of **KELLI SERRIDGE,**
Appellant,

v.

**ALLSTATE INSURANCE COMPANY,**
Appellee.

Nos. 4D14-287, 4D14-288, 4D14-289, 4D14-290, 4D14-291, 4D14-292,
4D14-293, 4D14-294, 4D14-295, 4D14-296, 4D14-297, 4D14-298,
4D14-299, 4D14-300, 4D14-301, 4D14-302, 4D14-303, 4D14-304,
4D14-305, 4D14-306, 4D14-307, 4D14-308, 4D14-309, 4D14-310,
4D14-311, 4D14-312, 4D14-313, 4D14-314, 4D14-315, 4D14-316,
4D14-317 and 4D14-318

[August 19, 2015]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Ted S. Booras, Judge; L.T. Case Nos. 502012SC002031XX, 502012SC002035XX, 502012SC003157XX, 502012SC003172XX, 502012SC003182XX, 502012SC003677XX, 502012SC003679XX, 502012SC003682XX, 502012SC003683XX, 502012SC003690XX, 502012SC003692XX, 502012SC003695XX, 502012SC003696XX, 502012SC003732XX, 502012SC004802XX, 502012SC004809XX, 502012SC006658XX, 502012SC007634XX, 502012SC020766XX, 502012SC020782XX, 502012SC020791XX, 502012SC021284XX, 502012SC021295XX, 502012SC021678XX, 502012SC021797XX, 502012SC022899XX, 502013SC000982XX, 502013SC001002XX, 502013SC001003XX, 502013SC001823XX, 502013SC003154XX, and 502013SC005090XX.

Gary M. Farmer, Sr. of Farmer Jaffe Weissing Edwards Fistos & Lehrman P.L., Fort Lauderdale; David M. Caldevilla of De La Parte & Gilbert, P.A., Tampa; and Stephen Deitsch, William Foman and Lindsay Porak of Deitsch & Wright, P.A., Lake Worth, for appellants.

Suzanne Y. Labrit and Douglas G. Brehm of Shutts & Bowen LLP, Tampa; and Peter J. Valeta of Meckler Bulger Tilson Marick & Pearson LLP, Chicago, Illinois, for appellee.

CIKLIN, C.J.

This appeal comprises thirty-two consolidated cases in which PIP claims were brought by medical services providers ("the Providers") against the appellee, Allstate Insurance Company ("Allstate"), under no-fault insurance policies issued to their insureds. At issue is whether, as asserted by the Providers, the language in the Allstate policy is ambiguous as to Allstate's election to reimburse the Providers pursuant to certain Medicare fee schedules provided for in section 627.736(5)(a)2., Florida Statutes (2009). The trial court agreed with Allstate and found that the policy language was, in fact, not ambiguous and certified the following question to this court:

> Whether the Defendant's PIP insurance policy language is legally sufficient to authorize [Allstate] to apply the [Medicare fee schedule] reimbursement limitations set forth in section 627.736(5)(a)2., Florida Statutes.

We answer that question in the negative, finding the policy language to be inherently unclear and reverse the summary judgment entered in favor of Allstate.

The only dispute between the parties concerns the meaning of a particular endorsement to the policy. The policy provision language chosen by Allstate resulted in the trial court's decision to enter the underlying summary judgment for Allstate.

The policy provides the following in pertinent part with respect to PIP benefits:

> Allstate will pay to or on behalf of the injured person the following benefits:
>
> 1. Medical Expenses
>    Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services.

An endorsement to the policy provides the following:

> Limits of Liability
>
> . . . .

> Any amounts payable under this coverage *shall be subject to* any and all limitations, authorized by section 627.736, [which would apply a Medicare fee schedule limitation] or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including, but not limited to, all fee schedules.

(Emphasis added).

The Providers argue that the "shall be subject to" provision in the endorsement is ambiguous, as it is unclear whether Allstate has actually and in fact elected to limit its reimbursements to the Providers under the Medicare fee schedules as provided for in section 627.736(5)(a)2.-5., Florida Statutes (2009), or is simply announcing that it is reserving its right to elect to do so. They analyze the policy at issue here to the ones found lacking in *Geico General Insurance Co. v. Virtual Imaging Services, Inc.*, 141 So. 3d 147 (Fla. 2013) ("*Virtual Imaging*"), and *Kingsway Amigo Insurance Co. v. Ocean Health, Inc.*, 63 So. 3d 63 (Fla. 4th DCA 2011) ("*Kingsway*"). In those cases, the courts found that the bare reference to the PIP statute was insufficient to put the insured and providers on notice that the insurer was, in fact, electing to employ the Medicare fee schedules. The Providers argue the language in the instant policy is similarly vague and only permissive in nature and merely incorporates the PIP statute. Our decision hinges on interpretation of contract of insurance language; thus our review is de novo. *See Virtual Imaging*, 141 So. 3d at 152 (citations omitted).

### *Historical Context*

Provisions of the PIP statute, section 627.736, Florida Statutes, are at the center of the instant controversy. The statute lays out the benefits that a personal injury protection policy must provide and the methods of calculating reimbursements thereunder. Subsection 627.736(1)(a), Florida Statutes (2012), provides that "[e]very insurance policy . . . shall provide personal injury protection" to specified individuals as follows: "*Medical benefits* – Eighty [80] percent of all reasonable expenses for medically necessary medical . . . services." As recognized by the Florida Supreme Court in *Virtual Imaging*, this provision requiring reimbursement of eighty percent of reasonable expenses for medically necessary services is "a basic coverage mandate" which is "the heart of the PIP statute's coverage requirements." 141 So. 3d at 155. Section 627.736(5)(a)1., Florida Statutes (2009), recites factors to consider in determining reasonableness.

As explained in *Virtual Imaging*, the statute was amended in 2008 to provide an additional method of calculating reasonableness. *Virtual Imaging*, 141 So. 3d at 156. Section 627.736(5)(a)2., Florida Statutes (2008), provides an alternative way in which "[t]he insurer may limit reimbursement to 80 percent" of a recited schedule of maximum charges, many of which are tied to Medicare fee schedules. For example, subsection 627.736(5)(a)2.f., Florida Statutes (2008), provides that insurers may limit reimbursement to "200 percent of the allowable amount under the participating physicians schedule of Medicare Part B."[1]

In *Virtual Imaging*, the Florida Supreme Court explained that an insurer's Medicare fee schedule election under section 627.736(5)(a)2. does not conflict with the basic "reasonable expenses" coverage mandate of section 627.736(1). *Id.* at 157. By electing to utilize the Medicare fee schedules, an insurer meets the mandate of providing "reasonable expenses" coverage. *Id.* The court further explained the effect of the 2008 amendments:

> [T]he 2008 amendments provided an alternative, permissive way for an insurer to calculate reimbursements to satisfy the PIP statute's reasonable medical expenses coverage mandate, but did not set forth the only methodology for doing so.
>
> The 2008 fee schedule amendments used the word "may" to describe an insurer's ability to limit reimbursements based on the Medicare fee schedules. *See* § 627.736(5)(a)2., Fla. Stat. . . . [I]f an insurer is not required to use the Medicare fee schedules as a method of calculating reimbursements, the insurer must have "recourse to some alternative means for determining a reimbursement amount" if it chooses not to use the Medicare fee schedules. . . .
>
> This alternative calculation mechanism is the same mechanism that was in place before the Legislature amended the PIP statute to incorporate the Medicare fee schedules: in the event of a dispute, a fact-finder must determine whether

---

[1] The statute was again amended in 2012 to add the following requirement: "Effective July 1, 2012, an insurer *may limit payment* as authorized by this paragraph *only if the insurance policy includes a notice at the time of issuance or renewal* that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph." *Virtual Imaging*, 141 So. 3d at 154 (emphasis in original) (quoting section 627.736(5)(a)5., Fla. Stat. (2012)).

- 4 -

the amount billed was reasonable.  The permissive language of the 2008 amendments, therefore, plainly demonstrates that there *are* two different methodologies for calculating reimbursements to satisfy the PIP statute's reasonable medical expenses coverage mandate.

. . . .

Accordingly, we conclude that the 2008 amendments were clearly permissive and offered insurers a choice in dealing with their insureds as to whether to limit reimbursements based on the Medicare fee schedules or whether to continue to determine the reasonableness of provider charges for necessary medical services rendered to a PIP insured based on the factors enumerated in section 627.736(5)(a)1.  In other words, we do not conclude that payment under section 627.736(5)(a)2. could never satisfy the PIP statute's basic "reasonable expenses" coverage mandate, set forth in section 627.736(1).  Instead, what we conclude is that the fee schedule payment calculation methodology in section 627.736(5)(a)2. was permissive.

*Id.* at 156-57 (footnote and internal citations omitted).

### *Analysis*

#### *Insurance Contract Interpretation*

The Florida Supreme Court has elaborated on insurance contract language interpretation:

Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written.  In construing insurance contracts, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect."  Courts should "avoid simply concentrating on certain limited provisions to the exclusion of the totality of others."  However, "[p]olicy language is considered to be ambiguous . . . if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.'"

*Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) ((alteration in original) (internal citations omitted). "Further, in order for an exclusion or limitation in a policy to be enforceable, the insurer must clearly and unambiguously draft a policy provision to achieve that result." *Virtual Imaging*, 141 So. 3d at 157.

"'Whether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation. However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner.'" *Smith v. Shelton*, 970 So. 2d 450, 451 (Fla. 4th DCA 2007) (citation omitted). "In the event policy provisions are ambiguous . . . then well-established rules of construction must be applied. The most basic of these rules is that ambiguous policy provisions are to be construed in favor of the insured and against their drafter, the insurer." *Discover Prop. & Cas. Ins. Co. v. Beach Cars of W. Palm, Inc.*, 929 So. 2d 729, 732 (Fla. 4th DCA 2006) (citations omitted).

### *Alleged Ambiguity of Subject Policy Language*

The Providers argue that the language in the endorsement is ambiguous, and that the trial court's ruling is contrary to *Kingsway* and *Virtual Imaging*. Those cases did not involve policies that referenced the Medicare fee schedules, as does the policy here. Instead, those policies broadly referenced the PIP statute. The policy in *Kingsway* "cite[d] the No-Fault Act, state[d] it will pay '80% of medical expenses,' and define[d] medical expenses as those that it is required to pay 'that are reasonable expenses for medically necessary . . . services.'" *Kingsway*, 63 So. 3d at 67. This court rejected the argument that "because the PIP statute is incorporated into the policy, [the insurance company] had the unilateral right to ignore the only payment methodology referenced in the policy." *Id.* We adopted the trial court's reasoning, which relied on *State Farm Florida Insurance Co. v. Nichols*, 21 So. 3d 904 (Fla. 5th DCA 2009):

> If the [insurer] wanted to take advantage of the permissive fee schedule, it should have clearly and unambiguously selected that payment methodology in a manner so that the insured patient and health care providers would be aware of it.

*Kingsway*, 63 So. 3d at 68 (alteration in original).

In *Virtual Imaging*, the insurance policy also merely referenced the PIP statute and with no specific reference to the Medicare fee schedules. It provided the following:

> Under Personal Injury Protection, the Company [GEICO] will pay, in accordance with, and subject to the terms, conditions, and exclusions of the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:
>
> (a) 80% of *medical expenses* . . . .

*Virtual Imaging,* 141 So. 3d at 157. In finding that this language was not sufficient for the insurance company to utilize the fee schedule limits, the Florida Supreme Court pointed out that "[t]he . . . policy does not include any reference to the Medicare fee schedules . . . ." *Id.* at 158. The court agreed with the reasoning in *Kingsway* and held that in order to limit coverage to the Medicare fee schedules, "the insurer must clearly and unambiguously elect the permissive payment methodology . . . ." *Id.*

Here, providing that any amounts payable would be "subject to" "any and all limitations" authorized by the statute or any amendments thereto, Allstate did nothing more than state the obvious by indicating that there was a possibility (and the statutory authorization) for Allstate to apply a specific reimbursement limitation. The only reasonable way to read the language is as a general recital of Allstate's reservation of its right to apply limitations authorized by law, with the accompanying and corresponding obligation to notify its policy holders of the election.

We cite to the solid reasoning contained in a final judgment penned by County Judge Robert W. Lee, who cogently parsed the language at dispute here and found it to be ambiguous:

> The "subject to provision" is intrinsically ambiguous, with many possible meanings. In context all of them create ambiguity. *See Affinity Internet Inc. v. Consol. Credit Couns. Serv., Inc.,* 920 So. 2d 1286, 1289 (Fla. 4th DCA 2006) . . . (subject to means "liable, subordinate, inferior, obedient to; governed or affected by; provided; answerable" (quoting BLACK'S LAW DICTIONARY 1425 (6th ed[.] 1990)). In fact its customary legal use is really only to "indicate a condition to one party's duty of performance and not a promise by the other." *BGT Group Inc. v. Tradewinds Eng. Serv. LLC,* 62 So. 3d 1192 (Fla. 4th DCA 2011) . . . (because of lack of detailed description of terms in document referred to as *subject to,* terms could not be deemed binding on party). Allstate's "*subject to* provision" just incants a statutory truism, namely that all PIP policies are subject to the PIP statute. Allstate's

"subject to provision" fails to state anywhere in clear, plain text that it will not pay 80% of medically necessary services – which its primary coverage clause requires. Nor does Allstate express in any way that it pay no more than FS 627.736(5)(a)(2)(a-1) allow. Giving due effect to all relevant words, Allstate fails to state anywhere in explicit, plain, simple, apt words that Allstate will not pay 80% of reasonable charges and will actually limit payment to FS 627.736(5)(a)(2)(a-f).

In *DPI of North Broward LLC (a/a/o Lauren Goldstein v. Allstate Fire and Cas. Co.,* 20 Fla. L. Weekly Supp. 161a (Fla. Broward County, Cnty. Ct. 2012) (Lee, J.) this Court held:

By use of the phrase "subject to," Allstate has not incorporated the optional provisions of the Medicare fee cap into the policy. *See St. Augustine Pools, Inc. v. James M. Barker, Inc.,* 687 So. 2d 957, 958 (Fla. 5th DCA 1997) . . . (the words "subject to" in a contract are distinct from "incorporating" provisions of another document). Allstate has said nothing more than what is already true. All PIP policies are "subject to" these provisions; however, Allstate must clearly and unambiguously *take the next step* to incorporate these optional provisions into the policy if it desires to use the alternative methodology provided.

. . . .

For Allstate to be allowed, after the fact, to pick and choose which 'limitation' amongst "any and all limitation" would render the Supreme Court's ruling in [*Virtual Imaging*] meaningless.

*Synergy Chiropractic & Wellness Ctr., Inc. v. Allstate Prop. & Cas. Ins. Co.,* 22 Fla. L. Weekly Supp. 750a (Broward County Court, Jan. 20, 2015) (footnote omitted).

### *The Word "Shall"*

Allstate relies on the placement of the word "shall," to precede the words, "be subject to." According to Allstate, the use of the word "shall" removes any possible ambiguity regarding whether the fee schedule limitations were to be applied: "This is a clear election which puts the insured on notice of Allstate's intent to limit reimbursements in

accordance with the fee schedules."

We agree with the Providers that this single word, read in the context of the entire policy, does not transform an ambiguous provision to one that is unambiguous. The word "shall" is meaningless because it simply emphasizes the obvious. Broken down to its most simple form, Allstate's policy says that "any amounts payable under this coverage *shall be subject to* any and all limitations" in the PIP statute. The policy text does not say that the limitations "shall be applied"; only that they shall be *subject to* being applied. The word "shall" does not make it clear whether Allstate will utilize the alternative method or is simply recognizing its entitlement to do so.[2]

### *The First District's Opinion in Stand-Up*

Our sister court recently found the provision at issue here to be *unambiguous* and legally sufficient to give the required notice to policy holders. In *Allstate Fire & Casualty Insurance v. Stand-Up MRI of Tallahassee, P.A.*, 40 Fla. L. Weekly D693 (Fla. 1st DCA Mar. 18, 2015), the First District reasoned that the plain language of the "subject to" provision "gives sufficient notice of [Allstate's] election to limit reimbursements by use of the fee schedules." *Id.* at 694. The court was persuaded by the use of the word "shall" in the provision. *Id.* The court also opined that *Virtual Imaging* provides for a "simple notice requirement," and that the policy in *Virtual Imaging* was found deficient because it "failed to 'indicate *in any way* . . . that it intended to limit its reimbursement to a predetermined amount of set reasonable medical expenses' using the fee schedules." *Id.* (quoting *Virtual Imaging*, 141 So. 3d at 158-59).

Although the *Virtual Imaging* court took note that the policy at issue was devoid of *any* indication that the insurer elected the Medicare fee schedules, this does not in turn mean that *any* type of reference to the fee schedules will suffice. *Virtual Imaging*'s central holding is clear: To elect a payment limitation option, the PIP policy must do so "clearly and unambiguously." A policy is not sufficient unless it plainly and obviously limits reimbursement to the Medicare fee schedules exclusively. The policy cannot leave Allstate's choice of reimbursement method in limbo under the guise of the words, "subject to" without incorporating specific words to that effect. The policy must make it inescapably discernable

---

[2] Allstate's policy language simply incorporates the PIP statute (including but not limited to all fee schedules) into its insurance contract. Allstate reserves a plethora of options for itself but does not specify or enumerate anything.

that it will not pay the "basic" statutorily required coverage and will instead substitute the Medicare fee schedules as the exclusive form of reimbursement.

Dozens of courts have weighed in on the meaning of the language at issue in this appeal, and there is a sharp divide as to whether the language is legally sufficient to invoke utilization of the Medicare fee schedules and thereby meet its statutory duty to provide clarity and specificity. And to be sure, Allstate owns the burden to avoid latent ambiguity. *See Ruderman*, 117 So. 3d at 950 (recognizing, with regard to ambiguous language, that "'[i]t has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer'" (quoting *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997))). While we recognize that a lack of consensus among the courts does not raise a presumption of ambiguity, it would be disingenuous for us to say that this widespread debate does not make us question Allstate's suggestion that its policy is, as it argues, "crystal clear." As Judge Klein said in *State Farm Fire & Casualty Insurance Co. v. Deni Associates of Florida, Inc.*, 678 So. 2d 397, 408 (Fla. 4th DCA 1996): "If Judges learned in the law can reach so diametrically conflicting conclusions as to what the language of the policy means, it is hard to see how it can be held as a matter of law that the language was so unambiguous that a layman would be bound by it."

### *Conclusion*

*Virtual Imaging* and *Kingsway* both make clear that insurance statutes require clarity and specificity in electing fee schedules with respect to PIP medical benefits coverage. Allstate's post hoc explanation of its intent as to the policy language it chose does not now remake clarity or dispel ambiguities. Based on the foregoing, we find the language at issue is ambiguous and that it must therefore be construed in favor of the Providers. We reverse and remand for further proceedings and certify conflict with *Allstate Fire & Casualty Insurance Co. v. Stand-Up MRI of Tallahassee, P.A.*, 40 Fla. L. Weekly D693 (Fla. 1st DCA Mar. 18, 2015).

*Reversed and remanded for further proceedings. Conflict certified.*

LEVINE, J., concurs specially with opinion.
MAY, J., dissents with opinion.

LEVINE, J., concurring specially.

I concur with the majority opinion and find that the language drafted by Allstate in its policy is ambiguous and thus compels a reversal.

In considering the specific provisions of this insurance contract, this case at its core rests on the following determination: if the provisions are unambiguous, then the insured has the sufficient notice required by the Florida Supreme Court in *Virtual Imaging*. However, if the provisions in question are ambiguous or can be susceptible to differing interpretations, then the insured does not have the sufficient notice mandated. "Policy language is considered to be ambiguous . . . if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.'" *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011)).

The policy included a provision, in accordance with the Florida Motor Vehicle No-Fault Law, stating that Allstate would pay to or on behalf of an injured person the following benefits for medical expenses: "Eighty percent of reasonable expenses for medically necessary medical, surgical, X-ray, dental and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital and nursing service."

In a policy endorsement amending the provision, the Allstate policy included the following: "Any amounts payable under this coverage shall be subject to any and all limitations authorized by 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including but not limited to, all fee schedules."

Thus, our reading of the policy depends on what words or phrases would dominate the review. Is it "shall" as a mandatory command, is it "subject to" as a permissive instruction, or is it "shall be subject to" which is an amalgamation of both mandatory commands and permissive suggestions? The basic rules of contract interpretation instruct us to read the provisions in whole and not in isolated parts. *Blackshear Mfg. Co. v. Fralick*, 102 So. 753, 754 (Fla. 1925). "Courts should 'avoid simply concentrating on certain limited provisions to the exclusion of the totality of others.'" *Ruderman*, 117 So. 3d at 948 (quoting *Swire Pac. Holdings v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). Further, ambiguities are to be construed against the drafter. *Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 434 (Fla. 1980).

These principles of contract interpretation share a commonality with the principles of statutory interpretation. *See OB/GYN Specialists of Palm Beaches, P.A. v. Mejia*, 134 So. 3d 1084, 1093 (Fla. 4th DCA 2014) (stating that a statute is ambiguous "[w]here there is more than one reasonable interpretation"); *Daneri v. BCRE Brickell, LLC*, 79 So. 3d 91, 94 (Fla. 3d DCA 2012) ("When interpreting a statute, we interpret its language and the resulting operation of its terms by reading the statute as a whole to give it meaning in its entirety."); *Traci Commc'ns, Inc. v. Fla. Dep't of Revenue*, 737 So. 2d 1255, 1256 (Fla. 4th DCA 1999) (recognizing rule that ambiguities in tax law are to be construed against taxing authority and in favor of taxpayer); *DeRoin v. State, Dep't of Bus. & Prof'l Regulation, Bd. of Veterinary Med.*, 160 So. 3d 516 (Fla. 4th DCA 2015) (recognizing that statutes authorizing sanctions or penalties against a person's professional license are to be interpreted in favor of the licensee). Because of these commonalities, it is useful to examine cases involving statutory as well as contractual interpretation in analyzing the case at bar.

Courts have through the years interpreted the phrase "shall be subject to" with obvious contradictory results. Some cases state that "shall be subject to" is a clear mandatory command. *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995) (majority finding "shall be subject to" imposes mandatory civil penalties); *Beardsly v. Chicago & N. W. Transp. Co.*, 850 F.2d 1255, 1264 (8th Cir. 1988) (finding "shall be subject to" is mandatory); *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 568 (N.J. 2013) (reading phrase "shall be subject to" as mandatory to give effect to entire provision); *Tilcon Conn., Inc. v. Town of N. Branford*, 37 Conn. L. Rptr. 750 (Conn. Super. Ct. 2004) (listing cases finding "shall be subject to" is mandatory); *TJX Cos., Inc. v. Superior Court*, 77 Cal. Rptr. 3d 114, 118 (Cal. Ct. App. 2008) (stating "shall be subject to" imposes a mandatory obligation). *See also Allstate Fire & Cas. Ins. v. Stand-Up MRI of Tallahassee, P.A.*, 40 Fla. L. Weekly D693 (Fla. 1st DCA Mar. 18, 2015) (finding, without analyzing phrase "shall be subject to," that insurance policy gave sufficient notice as required by statute).

Alternatively, other cases declare that "shall be subject to" is permissive and thus discretionary in nature. *Fallis v. City of N. Miami*, 127 So. 2d 883, 884 (Fla. 1961) (finding that "shall be subject to referendum" permits a referendum); *Leslie Salt*, 55 F.3d at 1397-98 (dissent concluding that "shall be subject to" imposed a discretionary civil penalty); *Pace Props., LLC v. Excelsior Constr., Inc.*, 3:08CV345/MCR/EMT, 2008 WL 4938412, at *3 (N.D. Fla. 2008) (listing cases finding "shall be subject to" is permissive); *City of Rochester v.*

*Corpening*, 907 A.2d 383, 387 (N.H. 2006) (majority finding that clause "shall be subject to" granted authority rather than imposed an obligation); *Mena Films, Inc. v. Painted Zebra Prods., Inc.*, 831 N.Y.S.2d 348 (N.Y. Sup. Ct. 2006) (finding "shall be subject to" language in jurisdiction-conferring clause permissive).

Once again, by demonstrating there is more than one reasonable interpretation of this provision, the basic rules of contract interpretation, which we are bound by, instruct us to find against the drafter, and find for more expansive insurance coverage.

The case of *Fallis v. City of North Miami* is instructive. In *Fallis*, taxpayers attempted to contest a municipal bond by stating that the bond issuance required a referendum by the voters, where the provision stated that "[a]ll bonds or other evidence of indebtedness issued hereunder shall be subject to referendum . . . ." 127 So. 2d at 884.

The Florida Supreme Court stated,

> A casual examination of the quoted provision might suggest merit in appellants' position. However, upon closer scrutiny, it will be seen that all that this section provides is that the described evidences of indebtedness 'shall be *subject* to referendum.' The provision is not mandatory; it is obviously intended to *permit* a referendum on a bond ordinance when such is demanded in accordance with other provisions of the municipal charter.

*Id.* Similarly, in the present case, an initial or "casual examination" may seem to suggest a mandatory provision, but under "closer scrutiny," the provision "shall be subject to" is "not mandatory."

Further, judges and commentators have recognized that even the solitary use of the word "shall" is "in short . . . a semantic mess. *Black's Law Dictionary* records five meanings for the word." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 113 (2012). As Scalia and Garner noted, to solve the problem of the diverse meanings of "shall," there has been a movement "to rewrite the federal rules . . . to remove all the *shalls* and otherwise restyle them. . . . Each *shall* became *must, is,* or *may.*" *Id.* at 114. *See also* Bryan A. Garner, Legal Writing in Plain English 106 (2001) ("[T]he Federal Rules of Appellate Procedure and the Texas Rules of Appellate Procedure have

recently been revamped to remove all *shalls*.").[3]  "In just about every jurisdiction, courts have held that *shall* can mean not just *must* and *may*, but also *will* and *is*.  Even in the U.S. Supreme Court, the holdings on *shall* are cause for concern."  *Id.* at 105 (footnotes omitted).[4]

Of course, Allstate could have written its policy to explicitly say that it "must" or "will" pay according to the limitations authorized by the statute.  Then the policy would be clear and unambiguous.  At oral argument, Allstate stated that in order to explicitly write in its policy that it will pay a certain rate as allowed by statute, such as 80% of 200% of the Medicare rates, Allstate would have to amend its policy each time the legislature changed the statute.  Although that is an understandable concern, it does not make the language of that provision any less ambiguous or make the drafter of the policy any less required to write unambiguously if it wants to rely on such a provision as a binding interpretation.

The logic and reasoning of Judge O'Scannlain is also persuasive in *Leslie Salt v. United States*, where he, like Justice Scalia, recognized that even terms such as "shall" can lack precision and clarity.  *Salt* concerned a statute with the same common phrase that confronts us here, "shall be subject to."  The Clean Water Act provided that "[a]ny person who violates [one of the enumerated sections of the Act] shall *be subject to* a civil penalty not to exceed $25,000 per day for each violation."  55 F.3d at 1397.

Judge O'Scannlain dissented from reading "this language to mean that civil penalties are mandatory."  *Id.*  He stated, "If section 309(d) had provided 'Any person who violates . . . shall *pay* a civil penalty,' I would readily agree with the majority's interpretation.  However, it does not so provide, and we cannot ignore the three words following the word 'shall.'"  *Id.*  Similarly, in the present case we cannot ignore the same three words following the word "shall," that being "be subject to."

---

[3] "As Joseph Kimble, a noted drafting expert, puts it: 'Drafters use it [shall] mindlessly.  Courts read it any which way.'"  Garner at 106 (citation omitted).  Garner concludes that one should adopt the style of "transactional drafters [who] have adopted the *shall*-less style" with remarkable clarity.  *Id.*

[4] *See* Garner at 105-06 n.5-10 (citing *Moore v. Illinois Cent. R. Co.*, 312 U.S. 630, 635 (1941); *Railroad Co. v. Hecht*, 95 U.S. 168, 170 (1877); *W. Wis. Ry. V. Foley*, 94 U.S. 100, 103 (1876); *Scott v. United States*, 436 U.S. 128, 146 (1978) (Brennan, J., dissenting); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 n.9 (1995); *United States v. Montalvo-Murillo*, 495 U.S. 711, 718 (1990)).

Judge O'Scannlain went on to state that the applicable section

> did not use the words "shall pay"; it used the words "shall be subject to." The latter phrase is synonymous with "shall be liable to" or "shall be answerable to." Read literally, the section merely states that a violator is liable to be assessed a civil penalty, not that he or she *must* be. In other words, civil penalties are discretionary."

*Id.* at 1397-98 (citation omitted). He concludes that "[i]f Congress had meant civil penalties to be mandatory, it could have written [the section] to state that a violator 'shall pay' a civil penalty." *Id.* at 1398.

Similarly, in the present case, if the drafter wanted to notify the insured that the medical bills would be paid pursuant to a particular statutory provision, the policy would state "shall pay" (or "must pay" or "will pay") according to that provision, and not state "shall be subject to."

In summary, I concur and would reverse the trial court and find the language in the policy ambiguous.

MAY, J., dissenting.

I respectfully dissent. For me, this issue was correctly decided in *Allstate Fire & Casualty Insurance v. Stand-Up MRI of Tallahassee*, 40 Fla. L. Weekly D693 (Fla. 1st DCA Mar. 18, 2015), and *South Florida Wellness, Inc. v. Allstate Insurance Co.*, No. 13-61759-CIV, 2015 WL 897201 (S.D. Fla. Feb. 13, 2015). Both courts encountered the same insurer and the same policy language. Without struggling to create an ambiguity, the First District held "that Allstate's policy language gave legally sufficient notice to its insureds of its election to use the Medicare fee schedules as required by *Virtual Imaging*." *Id.* at D694. And as Judge Dimitrouleas found, "the relevant language unambiguously provides notice of Allstate's election to use the Subsection 5(a)(2) fee schedule method." *S. Fla. Wellness, Inc.*, 2015 WL 897201, at *4. I agree with the conclusions reached by both courts and would affirm.

As Judge Osterhaus noted: "The crux of the PIP dispute here concerns whether Allstate's policy language adequately notifies insureds of its election to limit reimbursements via the Medicare fee schedules in § 627.736(5)(a)2., as required by *Virtual Imaging*." *Id.* The First District's conclusion "stem[med] from the policy's plain statement that reimbursements 'shall' be subject to the limitations in § 627.736, including 'all fee schedules.'" *Id.* That is precisely what Allstate has

done here.  It has placed the insured on notice that reimbursements are subject to the Medicare fee schedule-based limitation set forth in the PIP statute.  There is nothing ambiguous in the policy's language.

Unfortunately, the providers have led the majority down the yellow brick road.  The issue is not whether the policy is ambiguous, but rather whether the policy adequately put the insured on notice of the insurer's election to limit reimbursements according to the Medicare fee schedules set forth in section 627.736.  *See Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.* (*Virtual Imaging*), 141 So. 3d 147, 149–59 (Fla. 2013).  Instead of simply reading the policy's plain language for what it says, the majority spends fourteen pages trying to convince the reader that an ambiguity exists.

After all, let's remember the purpose of PIP coverage.  "[T]he purpose of the no-fault statutory scheme is to provide swift and virtually automatic payment so that the injured insured may get on with his [or her] life without undue financial interruption."  *Id.* at 153 (second alteration in original) (quoting *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 683–84 (Fla. 2000)) (internal quotation marks omitted).  Providers, however, look to get paid as much as possible, but that does not inure to the insured's benefit.  The less costly the services provided, the more services the insured can receive.  While some providers may choose to not treat an insured if their fee is limited to the Medicare fee schedules, that problem is one of the provider's making, not that of the insurer.

Since its inception, the PIP statute has been the playing field where providers and insurers battle over the meaning of its language.  The legislature continues to amend the PIP statute so that it serves the purpose for which it was intended.  Indeed, the majority notes the numerous times the PIP statute has been amended.  Each time that happens, insurers are required to review their policies and change language.  That comes at a cost.  And it is the insured that bears that cost.

Yet, time after time, the battle rages on.  As the Pope once asked Michelangelo during the painting of the Sistine Chapel:  "When will there be an end?"

Our supreme court noted that "[t]he permissive language of the 2008 amendments . . . plainly demonstrates that there *are* two different methodologies for calculating reimbursements to satisfy the PIP statute's reasonable medical expenses coverage mandate."  *Id.* at 156.  The majority suggests that the policy must make it "inescapably discernable"

what methodology will be used. As the First District articulated, "the language of [Allstate's] policy makes reimbursements subordinate to the fee schedules in rather unmistakable terms." *Stand-Up MRI of Tallahassee,* 40 Fla. L. Weekly at D694.

Here, Allstate specifically elected the limitations provided by the Medicare fee schedules and gave notice to the insured that it will pay according to their limitations. In short, the policy language is unambiguous.[5] I would affirm.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[5] In my view, it is unclear whether *Virtual Imaging* actually required an election of one of the two methodologies provided by the PIP statute as long as the insured is given notice that it would opt for one of the methodologies provided. That would still not make a policy ambiguous; it would simply allow the insurer discretion in choosing the methodology to be used.