# Third District Court of Appeal

## State of Florida

Opinion filed July 13, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D15-151; 3D14-2688; 3D14-3008; 3D15-149 & 3D15-150
Lower Tribunal Nos. 13-13281; 13-13100; 13-13171; 11-5020; 11-7064

_____

**Florida Wellness & Rehabilitation, etc., et al.,**
Appellants,

vs.

**Allstate Fire & Casualty Insurance Company, et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Don S. Cohn, Michaelle Gonzalez-Paulson, and Lawrence D. King, Judges.

Marlene S. Reiss, for appellants.

Shutts & Bowen LLP, and Suzanne Youmans Labrit, B.C.S., and Douglas G. Brehm (Tampa); Cozen O'Connor, and Peter J. Valeta (Chicago, IL), for appellees.

Before WELLS, FERNANDEZ and LOGUE, JJ.

LOGUE, J.

These consolidated appeals arise from five cases in which the county court has certified to us a single question of great public importance. In each case, a medical provider, as assignee of an individual insured by Allstate Insurance Company, sued Allstate for payment of medical bills under the corresponding PIP policy. Allstate paid the bills based upon the fee schedules established in section 627.736 (5)(a)(2)(f), Florida Statutes (2008), at the statutory rate of 80% of 200% of the Medicare Part B Schedules. To utilize the fee schedules to limit reimbursement in this manner, however, the policy at issue must clearly and unambiguously inform insureds that the insurance company has elected to use the statutory schedules. The medical providers asserted that the policies at issue (which have identical language on this point) failed to make the required clear and unambiguous election; Allstate asserted they did. The parties ultimately filed cross summary judgment motions on this issue, and the court in each of the cases granted summary judgment in favor of Allstate and denied the providers' motions. Each of the county court orders contains the following certified question:

> Does an Insurance Policy, Which Contains a "Limits of Liability" Provision That States, "Any amounts payable under this coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including but not limited to, all fee schedules," Clearly and Unambiguously Elect the Section 627.736(5)(a)2, Florida Statutes (2008), Methodology of Reimbursement as Required by the Florida

2

Supreme Court in GEICO v. Virtual Imaging Servs., Inc., 141 So. 3d 147 (Fla. 2013)?

We answer the question in the affirmative, affirm the county court orders, and certify conflict with the Fourth District's opinion in Orthopedic Specialists v. Allstate Insurance Company, 177 So. 3d 19 (Fla 4th DCA 2015).[1]

ANALYSIS

Our standard of review is de novo "[b]ecause the question presented requires this Court to interpret provisions of the Florida Motor Vehicle No-Fault Law—specifically the PIP statute—as well as to interpret the insurance policy." Virtual Imaging, 141 So. 3d at 152. We also keep in mind that "[w]hen interpreting an insurance contract, this Court is bound by the plain meaning of the contract's text." Id. at 157 (citation and quotation omitted). If the policy's language is "plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." Id. (citations omitted).

We first look to the language of the statute at issue. Section 627.736 (5)(a)(2)(f) provides:

---

[1] The Florida Supreme Court has accepted jurisdiction in Allstate Insurance Company v. Orthopedic Specialists, No. SC15-2298, 2016 WL 282060 (Jan. 20, 2016), after the Fourth District certified conflict with the First District opinion Allstate Fire and Casualty Insurance v. Stand-Up MRI of Tallahassee, P.A., 188 So. 3d 1 (Fla. 1st DCA 2015).

(2) The Insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:

. . . .

(f) For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or worker's compensation is not required to be reimbursed by the insurer.

The statute provides the insurance carriers with options for paying reimbursements, including the option of paying 80% of 200% of the allowable amount under the Medicare Part B schedule. However, because this option is permissive and not required, the insured must be put on notice that these limitations are being elected by the insurance carrier. Virtual Imaging, 141 So. 3d at 159.

In Virtual Imaging, the Florida Supreme Court held that under the 2008 amendments to the PIP statute, "a PIP insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insured by electing those fee schedules in its policy." Id. at 160. The Court further held that "[b]ecause the policy in [Virtual Imaging] did not reference the permissive method of calculation based on the Medicare fee schedules, [the insurance company] could

not limit its reimbursement based on those fee schedules." Id. The Florida Supreme Court thus

> conclude[d] that notice to the insured, through an election in the policy, is necessary because the PIP statute, section 627.736, requires the insurer to pay for 'reasonable expenses . . . for medically necessary . . . services,' § 627.736(1)(a), Fla. Stat., but merely permits the insurer to use the Medicare fee schedules as a basis for limiting reimbursements, see § 627.736(5)(a)2., Fla. Stat.

Virtual Imaging, 141 So. 3d at 150. While insurance carriers are free to avail themselves of the statutory fee schedules, the insureds must be put on notice of this election.

The policies at issue provide, in pertinent part, that "[a]ny amounts payable under this coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including but not limited to, all fee schedules." (emphasis added). Allstate argues that the language "subject to any and all limitations, authorized by section 627.736 . . . including but not limited to, all fee schedules" sufficiently places the insureds on notice that Allstate has elected to use the fee schedule limitations. Given that the policy plainly states that reimbursements "shall" be subject to the limitations in section 627.736, including "all fee schedules," we agree with Allstate that this is sufficient notice of Allstate's election to constrain its reimbursements in accordance with the limitations set forth in section 627.736 (5)(a)(2)(f).

5

The First District has held that language identical to that in the policy before us was sufficient to satisfy the requirements of Virtual Imagining and place the insured on notice of Allstate's election of the statutory limitations. Allstate Fire & Casualty Insurance v. Stand-Up MRI of Tallahassee, P.A., 188 So. 3d 1, 3 (Fla. 1st DCA 2015). The Second District, also reviewing identical policy language in an Allstate policy, arrived at the same holding. Allstate Indemnity Co. v. Markley Chiropractic & Acupuncture, LLC, 41 Fla. L. Weekly D793, D794 (Fla. 2d DCA Mar. 30, 2016). Analyzing the policy language, the First District concluded that "Virtual Imaging requires no other magic words from Allstate's policy and its simple notice requirement is satisfied by Allstate's language limiting '[a]ny amounts payable' to the fee schedule-based limitations found in the statute." Stand-Up MRI, 188 So. 3d at 3. Moreover, "[g]iven that the No-Fault Act does not provide any other fee schedules apart from those contained in subsection (5)(a)(2), said language is devoid of ambiguity." Markley Chiropractic, 41 Fla. L. Weekly at D794.

As recognized by the First District, Virtual Imaging involved an insurance policy where the insurer, GEICO, "failed to 'indicate in any way . . . that it intended to limit its reimbursement to a predetermined amount of set reasonable medical expenses' using the fee schedules." Stand-Up MRI, 188 So. 3d at 3. (quoting Virtual Imaging, 141 So. 3d at 158-159). In the consolidated cases before

6

us, however, the policy language explicitly states that any amounts payable under the policy are "subject to any and all limitations, authorized by section 627.736 . . . including but not limited to, all fee schedules." See id. ("Here, by contrast, Allstate's policy expressly limits reimbursements by 'all fee schedules' in the statute, which is consistent with Virtual Image's simple notice requirement."). The language used by Allstate is sufficient to place the insureds on notice of Allstate's election of the limitations allowed in the statutes.

The Fourth District, in Orthopedic Specialists, found "the language at issue is ambiguous and that it must therefore be construed in favor of the [p]roviders." 177 So. 3d at 26. In that case, however, Judge May strongly dissented, noting "the language of [Allstate's] policy makes reimbursement subordinate to the fee schedule in rather unmistakable terms." Id. at 31 (May, J., dissenting) (quoting Stand-Up MRI, 188 So. 3d at 4). We agree with Judge May's dissent.

The policy clearly states that "coverage shall be subject to any and all limitations . . . authorized by section 627.736 . . . including . . . all fee schedules." The phrase "subject to" as used in this policy indicates that coverage is governed by or limited by the fee schedules. "When expressing the hierarchical effect of overlapping provisions, the phrase 'subject to' is very commonly used to signal subordination." Stand-Up MRI, 188 So. 3d at 4; see also St. Augustine Pools, Inc. v. James M. Barker, Inc., 687 So. 2d 957, 958 (Fla. 5th DCA 1997) ("The term

7

'subject to' means 'liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable.'") (citation omitted).

Our Supreme Court has used the phrase in this manner. For example, Canon 6 of the Code of Judicial Conduct provides "[a] judge may receive compensation and reimbursement of expenses . . . subject to the following restrictions . . . ." (emphasis added). We are confident that an attempt to justify a violation of this provision by arguing that the language "subject to" failed to indicate the reimbursement of expenses was limited by the restrictions would be rejected out of hand as special pleading of the worst sort.

Similarly, our legislature has used the phrase "subject to" on numerous occasions in this manner. See § 435.12 (3), Fla. Stat (2015) ("Every employee. . . shall be subject to the requirements of this section with respect to entry of records in the clearinghouse and retention of fingerprints . . .") (emphasis added); § 443.1216(1)(a), Fla. Stat. (2015) ("The employment subject to this chapter includes a service performed, including a service performed in interstate commerce . . .") (emphasis added); § 443.1216 (1)(a)(2)(b)(VIII), Fla. Stat. (2015) ("The total wages subject to reemployment assistance taxes paid during the calendar quarter . . .) (emphasis added). We find no ambiguity in the use of the term "subject to" in these provisions.

As this discussion shows, a decision that the term "subject to" is ambiguous would mean that the Judicial Code and many provisions of Florida Statutes were legally meaningless and in need of redrafting. We decline to adopt such a counter-intuitive interpretation of a common and well-understood legal expression. The use of the phrase "subject to" in the policy places the insured on notice of the limitations elected by Allstate; indeed, we cannot discern any other alternative meaning to this language.

Accordingly, we agree with the First District's opinion in Allstate Fire and Casualty Insurance v. Stand-Up MRI of Tallahassee, P.A., 188 So. 3d 1 (Fla. 1st DCA 2015), and the Second District's opinion in Allstate Indemnity Co. v. Markley Chiropractic & Acupuncture, LLC, 41 Fla. L. Weekly D793 (Fla. 2d DCA Mar. 30, 2016), and certify conflict with the Fourth District's opinion in Orthopedic Specialists v. Allstate Ins. Co., 177 So. 3d 19 (Fla 4th DCA 2015).

Affirmed; certified questions answered; conflict certified.