PARIENTE, J.,
dissenting.
I dissent and would adopt the Fourth District’s well-reasoned decision in Orthopedic Specialists v. Allstate Insurance Co„ holding that the policy language in the Allstate personal injury protection (PIP) policy is “inherently unclear” and did not properly provide legally sufficient notice to the insured or medical providers of the insurer’s election to use the permissive Medicare fee schedule. 177 So.3d 19, 20-21 (Fla. 4th DCA 2015). If an insurer elects to use the Medicare fee schedule as the standard for reimbursement, “the insurer must clearly and unambiguously draft a policy provision to achieve that result.” Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc., 141 So.3d 147, 157 (Fla. 2013). Likewise, I agree with the Fourth District’s analysis that “[a] policy is not sufficient unless it plainly and obviously limits reimbursement to the Medicare fee schedules exclusively.” Orthopedic Specialists, 177 So.3d at 25-26.
As the majority stated, the policy language at issue in this case states:
Allstate will pay to or on behalf of the injured person the following benefits: 1. Medical Expenses
Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services.
[[Image here]]
Limits of Liability
[[Image here]]
Any amounts payable under this coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle'No-Fault Law, as enacted, amended or otherwise continued in the law, including, but not limited to, all fee schedules.
Majority op. at 3.
I agree with the Fourth District’s explanation that the policy language including “all fee schedules” authorized by Florida’s PIP statute does not clearly and unambiguously put providers on notice that Allstate elects the Medicare fee schedule. As the Fourth District also explained regarding the “subject to” language:
The policy cannot leave Allstate’s choice of reimbursement method in limbo under the guise of the words, “subject to” without incorporating specific words to that effect. The policy must make it inescapably discernable that it will not pay the “basic” statutorily required coverage and will instead substitute the Medicare fee schedules as the exclusive form of reimbursement.
Dozens of courts have weighed in on the meaning of the language at issue in this appeal, and there is a sharp divide as to whether the language is legally sufficient to invoke utilization of the Medicare fee schedules and thereby meet its statutory duty to provide clarity and specificity. And to be sure, Allstate owns the burden to avoid latent ambiguity. See [Wash. Nat’l Ins. Co. v.] Ruderman, 117 So.3d [943,] 950 [ (Fla. 2013) ] (recognizing, with regard to ambiguous language, that “£[i]t has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the *981 policy, which is to be construed liberally in favor of the insured and strictly against the insurer’ ” (quoting Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla. 1997))). While we recognize that a lack of consensus among the courts does not raise a presumption of ambiguity, it would be disingenuous for us to say that this widespread debate does not make us question Allstate’s suggestion that its policy is, as it argues, “crystal clear.” As Judge Klein said in State Farm Fire & Casualty Insurance Co. v. Deni Associates of Florida, Inc., 678 So.2d 397, 408 (Fla. 4th DCA 1996): “If Judges learned in the law can reach so diametrically conflicting conclusions as to what the language of the policy means, it is hard to see how it can be held as a matter of law that the language was so unambiguous that a layman would be bound by it.”
Orthopedic Specialists, 177 So.3d at 26.
The Amicus Brief of the Florida Medical Association, in support of the medical provider, explains in detail both the history of Florida’s PIP statute and its many amendments and the dilemma posed by this ambiguous policy provision, which allows Allstate to select any method of reimbursement rather than exclusively electing the Medicare fee schedule. As the Amicus states in explaining the importance of clarity in the PIP carrier’s election of a fee schedule:
The election as to which payment methodology is utilized by Allstate is critical to the medical profession and carries with it ramifications that directly affect physician reimbursements and the doctor patient relationship. For example, if an insurer elects the fact dependent method of subsection (5)(a)l to calculate benefits, the physician is still permitted to charge and is in a position to collect what the physician considers a reasonable amount for their services. On the other hand, if an [sic] PIP insurer properly elects the fee schedule method of subsections (5)(a)2 the physician is limited to a payment that may be below the cost of rendering the care or in a worst case scenario to no compensation if the treatment is “not reimbursable under Medicare or workers’ compensation.” See § 627.736(5)(a)2.f. The physician further is prohibited from balance billing their patients. See § 627.736(5)(a)5. In short, the fee schedule amount is a “take it- or leave it” proposition.
Unfortunately, the practice of medicine requires physicians to make some difficult choices. One of those is whether it can continue to treat patients based on certain reimbursement rates. Under traditional health insurance a provider may enter into a managed care network agreement with a health insurance company and agrees to reduce its rates, it does so in exchange for different forms of consideration. There is an opportunity for additional business and the provider has none of the procedural obstacles that face providers who agree to treat automobile accident insureds.
Until the enactment of the permissive fee schedule, medical providers knew that No-Fault insurance was one of the last bastions of first party coverage where reimbursement was based solely on reasonable charges. If a provider felt that its charge was reasonable, it knew that the insurer will have to pay based on that amount or the provider had the right to challenge the insurer’s determination in court. It was this trade-off that made the “red-tape” inherent in complying with the PIP statute—or to engage in first and third party litigation—somewhat economical to the provider. If, however, the reimbursement will be limited, each provider will have to decide whether the meager amounts payable under the fee schedules are sufficient to justify the “red tape”, limitations and *982 requirements inherent in providing services to an injured accident victim. [n'9]
[N.9] Several appellate court decisions have recognized, the disparity between payment under the “fee schedule method” that pays much lower benefits (commensurate with meager Medicare rates) than would be payable under the “fact based payment method.” See Geico Indem. Co. v. Physicians Grp. LLC, 47 So.3d 354, 356 (Fla. 2d DCA 2010) (PIP insurer unlawfully relied on Medicare fee schedules to pay merely $1,122.86 for a $10,800 surgery); Nationwide Mutual Ins. Co. v. AFO Imaging, Inc., 71 So.3d 134, 137 (Fla. 2d DCA 2011) (fee schedule method is “utilized in computing the minimum amount” payable by PIP); [Allstate Fire & Cas. Ins. Co. v.] Stand-Up MRI, [188 So.3d 1, 3 (Fla. 1st DCA 2015) ] (fact dependent reasonable amount method “apparently results in higher reimbursements” than permissive fee schedule method).
Br. of Amicus Curiae Fla. Medical Ass’n (Mar. 11, 2016), at 14-16.
Due to the ramifications a PIP carrier’s fee schedule selection has on physicians, as the Amicus explained, and the resulting importance that policies be “clear and unambiguous,” as our precedent requires, I agree with the Fourth District that “the language at issue is ambiguous and ... must therefore be construed in favor of the Providers.” Orthopedic Specialists, 177 So.3d at 26.
LEWIS, J., and PERRY, Senior Justice, concur.