OSTERHAUS, J.
Stand-Up MRI of Tallahassee, P.A., an assignee of fourteen named insureds, challenges the reimbursements made by the Appellants, Allstate Fire & Casualty Insurance Company, Allstate Property & Ca *2 sualty Insurance Company, and Allstate Insurance Company (collectively .“Allstate”) under the Personal Injury Protection (PIP) coverage of their insurance policies. .Stand-rUp MRI argues that Allstate failed to give notice in its policy of using Medicare fee schedules to limit benefit reimbursements contrary to the Florida Supreme Court’s decision in Geico Gen. Ins. Co. v. Virtual Imaging Servs. Inc., 141 So.3d 147 (Fla.2013) ('Virtual Imaging). The county court agreed with .Stand-Up MRI that Allstate’s policy failed to give the requisite notice and it certified a question of great public importance to this court.[1]
We accepted jurisdiction of the fourteen consolidated cases and now conclude that Allstate’s insurance policy provided adequate notice of its election to use the Medicare fee schedules referenced in § 627.736(5)(a)2., Florida Statutes.
I.
The basic facts in these consolidated appeals are hot disputed. As the as-signee of PIP benefits of Allstate insureds, Stand-Up MRI sued in county court alleging that Allstate improperly used Medicare fee schedules to calculate PIP coverage reimbursements without adequately notifying its insureds. We review the challenge to Allstate’s policy language de novo, as though it were being considered for the first time in this appeal. Virtual Imaging, 141 So.3d at 152; Spaid v. Integon Indem. Corp., 143 So.3d 949, 950 (Fla. 1st DCA 2014), reh’g denied (Aug. 18,2014).
A.
In Virtual Imaging, the Florida Supreme Court considered the same PIP notice issue involving another insurer’s policy. There too, an MRI-provider had supplied services and then disputed the insurer’s authority to'' limit reimbursements under Medicare fee schedules. In deciding the case, the Court provided an extensive overview and analysis of the history of Florida’s PIP statutory scheme that informs the analysis here, including the 2008 amendment authorizing insurers to limit reimbursements by the use of fee schedules. Virtual Imaging, 141 So.3d at 152-56. In sum, § 627.736(l)(a) requires automobile insurers to provide PIP coverage for eighty percent of all “reasonable expenses” for medically necessary services, such as those provided by StandUp MRI in this case.
The Florida Motor Vehicle No-Fault Law provides two ways of determining whether expenses are “reasonable” for purposes of insurer reimbursements. The first is a fact-dependent methodology that takes into account the service provider’s usual.and customary charges, community-specific , reimbursement levels, and other relevant information. . See § 627.736(5)(a)l., Fla. Stat.; Virtual Imaging, 141 So.3d at 155-56. This is the default methodology for calculating PIP *3 reimbursements, which also apparently results in higher reimbursements. The second methodology, introduced by the Legislature in 2008, allows reimbursements for medical services like Stand-Up MRI’s to be limited via the use- of fee schedules identified in § 627.736(5)(a)2. See Virtual Imaging, 141 So.3d at 156. Insurers using fee schedules can limit reimbursements to eighty percent of two hundred percent of the applicable Medicare fee schedule. Id. To . use the fee schedules to limit reimbursements, however, the Florida Supreme Court held that insurers must -first give notice to their insureds within the policy. See id. at 158 (citing Kingsway Amigo Ins. Co. v. Ocean Health, Inc., 63 So.3d 63, 67-68 (Fla. 4th DCA 2011)). “[T]he insurer cannot take advantage of the Medicare fee schedules to limit reimbursement without notifying its insured by electing those fee schedules in its policy.” Id. at 159.
B.
The crux of the PIP dispute here concerns whether Allstate’s policy language adequately notifies insureds- of its election to limit reimbursements via the Medicare fee schedules in § 627.736(5)(a)2., as required by Virtual Imaging. Stand-Up MRI argues that Allstate’s policy fails under Virtual Imaging because it is ambiguous. But Allstate points to language in Part III of its policy as having satisfied Virtual Imaging ⅛ notice requirement:
In accordance with the Florida Motor Vehicle No-Fault Law, [Allstate] will pay to or on behalf of the injured person the following benefits....
1. Medical Expenses
Eighty percent of reasonable expenses for medically necessary ... services....
Any amounts payable under.this coverage shall be subject to any and all limitations, authorized by section-627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, -.as enacted, amended or otherwise continued in the law, including, but not limited to, all fee schedules. ■
We agree with Allstate that the 'policy gives sufficient notice of its' election to limit reimbursements by use of the fee schedules. Our conclusion stems from the policy’s plain statement that reimbursements “shall” be subject to the limitations in § 627.736, including “all fee schedules.” See Virtual Imaging, 141 So.3d at 157 (quoting State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So.3d 566, 569-70 (Fla.2011)) (“If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain' meaning of the language used so as to give effect to the policy as it was written.”). Section 627.736(5)(a)2., in turn, refers to Medicare fee schedule-based limitations and provides that “insurer[s] may limit reimbursement to 80 percent of the ... schedule of maximum charges.” Virtual Imaging requires no other magic words from Allstate’s policy and its simple notice requirement is satisfied by Allstate’s language limiting “[a]ny amounts payable” to the fee schedule-based limitations found in the statute.
Moreover, Allstate’s policy is unlike the one found deficient in Virtual Imaging. There, Geico failed to “indicate in any way ... t|iat it intended to limit its- reimbursement to a predetermined amount of set reasonable medical expenses” using the fee schedules. Id. at 158-59 (emphasis added). Here, by contrast, ■ Allstate’s policy expressly limits reimbursements by “all fee schedules” in the statute, which is consistent-with Virtual Imaging’s simple notice requirement. •
*4 It is furthermore relevant -that the Court in Virtual Imaging distinguished between two different versions of Geico’s policy language: earlier language that did not refer to fee schedules and amended language that did; Id. at 150.[2] The Court found only Geico’s former policy language deficient, while recognizing that its amendment included “an election of the Medicare fee schedules as the method of calculating reimbursements.” Id. The Court’s comparative treatment of these provisions lends credence to our conclusion here because Allstate’s policy substantially resembles Geico’s amended policy, both subjecting reimbursements to “all fee schedules” provided in the law.
Finally, Stand-Up MRI argues that Allstate’s. use of the phrase “subject to ... all fee schedules” fails to provide sufficient notice that reimbursements-will always be limited by the fee schedules. In its view, “subject to” means only that Allstate had the option to limit reimbursements per the Medicare fee schedule, not that it would so limit reimbursements. But we see no ambiguity here because the language of the policy makes reimbursements subordinate to the.fee schedules in rather unmistakable terms. When expressing the hierarchical effect of overlapping provisions, the phrase “subject to” is very commonly used to signal subordination. See Bryan A. Garner, Gamer’s Dictionary of Legal Usage 616 (2011 ed.); see also St. Augustine Pools, Inc. v. James M. Barker, Inc., 687 So.2d 957, 958 (Fla. 5th DCA 1997) (citing Black’s Law Dictionary 1425 (6th éd. 1990)) (defining “subject to” as “liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable”). Allstate’s fee schedule reference is Included within the “Limits of Liability” heading in Part III of Allstate’s policy, in the same Part setting forth Allstate’s responsibility to reimburse eighty percent of reasonable expenses for medically necessary services. And the provision says that “[a ]ny amounts payable under this coverage shall be subject to any and all limitations authorized by section 627.736 ... including ... all fee schedules.” We find no ambiguity in this provision’s notice of Allstate’s election to use the fee schedules. ■
II.
Thus we conclude that Allstate’s policy language gave legally sufficient notice to its insureds of its election to use the Medicare fee schedules as required by Virtual Imaging. We answer the certified question in the affirmative, reverse the final judgments entered in the cases consolidated in this appeal, and remand the cases for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WOLF and MAKAR, JJ., concur.

. The county court certified the following question:
Where the principal PIP coverage clause in a policy for medical benefits states that it will pay “eighty percent of reasonable expenses for medically necessary” services, does the following provision clearly and unambiguously elect/give notice, in accordance with the Supreme Court’s decision in Virtual Imaging, to reimburse medical benefits solely and exclusively according to the. amounts permitted in the Medicare fee schedules and related limitations of section 627.736(5)(a)2-5:
Any amounts payable under this coverage shall be subject to any and all limitations authorized by section 027.736 or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including, but not limited to, all fee schedules.

. During the period specified in the Court’s certified question in Virtual Imaging — "PIP POLICIES ISSUED AFTER JANUARY 1, 2008" — Geico amended its policy language to provide:
[Geico] will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law ... 80% of medical expenses.
(emphasis added).