NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| ALLSTATE INDEMNITY COMPANY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2D14-3818 |
| | ) | |
| MARKLEY CHIROPRACTIC & ACUPUNCTURE, LLC, as assignee of ILENE CHAVEZ, | ) ) ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2D14-6058 |
| | ) | |
| DIAGNOSTIC IMAGING CONSULTANTS OF ST. PETERSBURG, P.A. as assignee of YOSLEY GONZALEZ, | ) ) ) | CONSOLIDATED |
| | ) | |
| Appellee. | ) | |

Opinion filed March 30, 2016.

Appeals from the County Court for
Hillsborough County; Herbert M. Berkowitz,
Judge.

Anthony J. Parrino of Reynolds Parrino
Spano & Shadwick, P.A., St. Petersburg;
and Peter J. Valeta of Meckler Bulger Tilson
Marick & Pearson LLP, Chicago, Illinois;
for Appellant.

Michael R. Bray and David M. Caldevilla of
de la Parte & Gilbert, P.A., Tampa; and
Daniel Gutierrez of Daniel Gutierrez, P.A.,
Orlando, for Appellee Markley Chiropractic
& Acupuncture, LLC.

David M. Caldevilla of de la Parte & Gilbert,
P.A., Tampa; and Lorca J. Divale of The
Physician Collections Group, P.A., Tampa,
for Appellee Diagnostic Imaging
Consultants of St. Petersburg, P.A.

LaROSE, Judge.

Allstate Indemnity Company and Allstate Insurance Company (collectively,

Allstate) appeal the trial court's final summary judgments in favor of Markley

Chiropractic & Acupuncture, LLC (Markley), as assignee of Ilene Chavez, and

Diagnostic Imaging Consultants of St. Petersburg, P.A. (Diagnostic), as assignee of

Yosley Gonzalez.  Markley and Diagnostic each sued Allstate for payment of Personal

Injury Protection (PIP) insurance benefits.[1]

The trial court in each case certified to us, as a matter of great public

importance, the following question:

> Does a PIP policy that expressly states that "any amounts
> payable under this coverage shall be subject to any and all
> limitations authorized by Fla. Stat. § 627.736, or any other
> provisions of the Florida Motor Vehicle No-Fault Law, as
> enacted, amended or otherwise continued in the law, . . .
> including, but not limited to, all fee schedules," clearly and
> unambiguously notify the insured of the methodology the
> insurer will apply in limiting reimbursement of PIP benefits?

---

[1]We agreed to hear these cases and exercise our jurisdiction under
Florida Rule of Appellate Procedure 9.030(b)(4)(A) (pass-through from county court).

<u>See</u> Fla. R. App. P. 9.030(b)(4)(A), 9.160(d). Because the trial court erred in granting final summary judgments against Allstate, we reverse.

The facts are straightforward and not in serious dispute. Allstate issued separate automobile insurance policies, with PIP benefits, to Ms. Chavez and to Mr. Gonzalez. While the policies were in effect, each insured was involved in a motor vehicle accident. They suffered injuries that were covered under the PIP portion of their respective policies. Markley treated Ms. Chavez; Diagnostic treated Mr. Gonzalez. Each insured received services that were reasonable, medically necessary, related to the subject accidents, and covered by their policies. Each executed a valid assignment of benefits to their respective medical-service provider. The assignments enabled Markley and Diagnostic to bill and receive payment directly from Allstate for the services they rendered to each insured. Allstate paid PIP benefits, but not in the amounts sought by Markley and by Diagnostic.

Markley and Diagnostic each sued Allstate for breach of contract, alleging that Allstate failed to pay the full amount of benefits required by the policies and by section 627.736, Florida Statutes (2010). The legal issue before us is important; the financial stakes are slight. The combined unpaid benefits in controversy are less than $264. Markley billed Allstate $3522 and Diagnostic billed $165. They argue that, under the reasonable-expenses provisions of the policies and section 627.736(1), Allstate should have paid them eighty percent of the billed amounts, $2817.60 and $132. Allstate claims that it correctly paid $2628.44 and $57.74 under the alternative fee-schedule provisions of section 627.736(5)(a)(2)(f) and the policy endorsements set forth below.

- 3 -

Section 627.736[2] provided, in pertinent part, as follows:

(1) REQUIRED BENEFITS.— Every insurance policy . . . shall provide personal injury protection to the named insured . . . as follows:
(a) *Medical benefits.*—Eighty percent of all reasonable expenses for medically necessary medical . . . services . . . .
. . . .

(5) CHARGES FOR TREATMENT OF INJURED PERSONS.—
(a) 1. Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered . . . . With respect to a determination of whether a charge . . . is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
. . . .
f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. . . .

(Emphasis added.)

The PIP portion of each policy included the following provision reflecting

the language of section 627.736(1):

---

[2]The legislature amended section 627.736. Ch. 2012-197, § 10, at 2737-56, Laws of Fla. Among other changes, the amendment renumbered subsections so that sections (5)(a)(1) and (5)(a)(2)(f) above, applicable here, became sections (5)(a) and (5)(a)(1)(f), respectively. See id.

> Allstate will pay to or on behalf of the injured person the
> following benefits:
> 1. Medical Expenses
> Eighty percent of all reasonable expenses for medically
> necessary medical . . . services . . . .

But, an endorsement in each policy added the following provision, consistent with limitations contained in section 627.736(5)(a)(2):

> Any amounts payable under this coverage shall be subject to
> any and all limitations, authorized by section 627.736, or any
> other provisions of the Florida Motor Vehicle No-Fault Law,
> as enacted, amended or otherwise continued in the law,
> including but not limited to, all fee schedules.

In both cases, the parties agreed that the sole legal issue for resolution by the trial court was whether Allstate's policy language permitted it to limit reimbursement according to the Medicare fee schedule of maximum charges described in section 627.736(5)(a)(2)(a)-(f).

Relying, as they did in the trial court, on Geico General Insurance Co. v. Virtual Imaging Services, Inc., 141 So. 3d 147 (Fla. 2013), Markley and Diagnostic argue that Allstate's policy language was ambiguous and insufficient to permit application of the endorsement's reimbursement limitation. In Virtual Imaging, the supreme court held that subsections 627.736(5)(a)(1) and (5)(a)(2) describe distinct methodologies for the insurer to determine a reasonable charge for medical services. Virtual Imaging, 141 So. 3d at 155-58. The first method, described in section 627.736(5)(a)(1), determines reasonableness by "a fact-dependent inquiry determined by consideration of various [enumerated] factors." Virtual Imaging, 141 So. 3d at 155-56.

Alternatively, under section 627.736(5)(a)(2), reasonableness is determined "by reference to the Medicare fee schedules." Virtual Imaging, 141 So. 3d

- 5 -

at 156. Use of these fee schedules predetermines "reasonable expenses" for covered services. This predetermination promotes a key purpose of the PIP statute, to provide "swift and virtually automatic payment" of benefits. See Ivey v. Allstate Ins. Co., 774 So. 2d 679, 683-84 (Fla. 2000) (quoting Gov't Emps. Ins. Co. v. Gonzalez, 512 So. 2d 269, 271 (Fla. 3d DCA 1987)).

As here, the dispute in Virtual Imaging focused on the insurer's reliance on subsection (5)(a)(2)(f) to limit reimbursement to "200 percent of the allowable amount under the participating physicians schedule of Medicare Part B." See Virtual Imaging, 141 So. 3d at 156 (quoting § 627.736(5)(a)(2)(f)). The policy in Virtual Imaging provided that the insurer would pay PIP benefits of eighty percent of all reasonable expenses for medically necessary medical services "in accordance with, and subject to the terms, conditions, and exclusions of the Florida Motor Vehicle No-Fault Law, as amended." See id. at 157-58.

"[T]he policy did not reference the permissive Medicare fee schedule method of calculating reasonable medical expenses" to notify its insured and providers "regarding the amount of PIP coverage the insurer will provide." Id. at 158. Consequently, the supreme court held that the insurer could not rely on the alternative method to limit PIP reimbursements. Id. The court rejected the insurer's argument that it incorporated the fee schedules by general reference to "the Florida Motor Vehicle No-Fault Law, as amended." Id. To take advantage of the Medicare fee schedules, the insurer must, in its policy, elect to use the permissive fee-schedule calculation method. Id.

Virtual Imaging is not as convincing as Markley and Diagnostic urge. The Allstate policies before us specifically provide that "[a]ny amounts payable under this

- 6 -

coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, . . . including but not limited to, all fee schedules." (Emphasis added.) The trial court found that this language did not "constitute a [clear and unambiguous] valid notice of intent to select a specific methodology of reimbursement." Seemingly, the trial court understood Virtual Imaging to require an express and specific election of the Medicare fee schedules or section 627.736(5)(a)(2)-(5).

We must agree with Allstate that the trial court misapplied Virtual Imaging. Allstate provided notice of its election to use the alternative method of benefit calculation, stating in the policy endorsement that "[a]ny amounts payable under this coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including but not limited to, all fee schedules." (Emphasis added.) As the Miami-Dade Circuit Court recently remarked, "[g]iven that the No-Fault Act does not provide any other fee schedules apart from those contained in subsection (5)(a)(2), said language is devoid of ambiguity." Excellent Health Servs., Corp. v. United Auto Ins. Co., No. 13-2221 SP 24 (01), 2014 WL 2516476, at *3 (Fla. 11th Cir. Ct. June 3, 2014). We, too, conclude that Allstate's policy language unmistakably makes reimbursements subject to the Medicare fee schedules. See Allstate Fire & Cas. Ins. v. Stand-Up MRI of Tallahassee, P.A., 40 Fla. L. Weekly D693, D694 (Fla. 1st DCA Mar. 18, 2015); but see Orthopedic Specialists v. Allstate Ins. Co., 177 So. 3d 19, 21 (Fla. 4th DCA 2015) (finding identical policy language "inherently unclear"; certifying conflict with Stand-Up MRI).

- 7 -

We do not quarrel with Virtual Imaging's holding that notice to the provider is required. However, Virtual Imaging did not dictate a form of notice. S. Fla. Wellness, Inc. v. Allstate Ins. Co., 89 F. Supp. 3d 1338, 1341 (S.D. Fla. 2015). It seems clear to us that "Virtual Imaging requires no other magic words from Allstate's policy and its simple notice requirement is satisfied by Allstate's language limiting '[a]ny amounts payable' to the fee schedule-based limitations found in the statute." Stand-Up MRI, 40 Fla. L. Weekly at D694; see Excellent Health Servs., 2014 WL 2516476, at *3 ("Virtual Imaging does not require insurers to specifically state the word 'Medicare.' "). "Allstate leaves no wiggle room as to whether fee limitations may be utilized—both providers and insured are on notice that 'all fee schedules' 'shall' be applied." S. Fla. Wellness, 89 F. Supp. 3d at 1341.

Allstate's policy language gave its insureds, and their respective medical-care providers, legally sufficient notice, as required by Virtual Imaging, of its election to use the Medicare fee schedules. Accordingly, we answer the certified question in the affirmative, reverse the trial court's orders granting summary judgment against Allstate, remand these cases for further proceedings, and certify conflict with Orthopedic Specialists, 177 So. 3d 19.

Reversed and remanded for further proceedings consistent with this opinion; certified question answered; conflict certified.

VILLANTI, C.J., and SALARIO, J., Concur.

- 8 -