# Third District Court of Appeal

## State of Florida

Opinion filed April 19, 2017.
THIS OPINION IS NOT FINAL UNTIL DISPOSITION OF ANY MOTION FOR
REHEARING AND/OR REHEARING EN BANC. ANY PREVIOUSLY-FILED
MOTION FOR REHEARING EN BANC IS DEEMED MOOT.

_____

No. 3D16-38
Lower Tribunal No. 13-461
_____

**Allstate Fire and Casualty Insurance Company,**
Petitioner,

vs.

**Hallandale Open MRI, LLC, a/a/o Alexia Blake,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Appellate Division, Jacqueline Hogan Scola, Jorge Cueto, and Ariana Fajardo Orshan, Judges.

Shutts & Bowen, and Suzanne Youmans Labrit and Douglas G. Brehm (Tampa); Cozen O'Connor, and Peter J. Valeta (Chicago, IL), for petitioner.

Marlene S. Reiss, for respondent.

Before SALTER, LOGUE and SCALES, JJ.

SALTER, J.

On Motion for Rehearing

On consideration of the petitioner's motion for rehearing, the response, and the decision of the Supreme Court of Florida in <u>Allstate Insurance Co. v. Orthopedic Specialists</u>, No. SC15-2298, 2017 WL 372092 (Fla. Jan. 26, 2017) ("<u>Orthopedic Specialists II</u>"), we withdraw our opinion in this case issued September 28, 2016,[1] and replace it with the opinion which follows.

In the September 2016 opinion, we dismissed a petition for second-tier certiorari filed by Allstate Fire and Casualty Insurance Company ("Allstate"). Allstate's petition asked the Court to quash a 2015 circuit court appellate division opinion affirming a county court judgment for a medical provider in a personal injury protection (PIP) auto insurance case. The appellate division decided an interpretive question regarding the sufficiency of PIP policy language following the Legislature's amendments to section 627.736, Florida Statutes, in 2008.

In <u>Orthopedic Specialists II</u>, the Supreme Court of Florida has now determined that interpretive question. The Court held that a PIP policy term providing that reimbursements "shall be subject to" the Medicare fee schedules in

---

[1] <u>Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI, LLC</u>, 41 Fla. L. Weekly D2208 (Fla. 3d DCA Sept. 28, 2016).

2

section 627.736(5)(a)2., Florida Statutes (2009), is unambiguous, resolving a conflict in decisions previously issued by the First and Fourth District Courts of Appeal: Allstate Fire & Cas. Ins. Co. v. Stand-Up MRI of Tallahassee, P.A., 188 So. 3d 1 (Fla. 1st DCA 2015) (finding the policy provision unambiguous and mandatory), and Orthopedic Specialists v. Allstate Ins. Co., 177 So. 3d 19 (Fla. 4th DCA 2015) ("Orthopedic Specialists I") (finding the policy provision ambiguous). At the time the circuit court appellate division ruled in the present case, this Court had not addressed the underlying issue.[2] The circuit court appellate division concluded that the PIP policy language was ambiguous, following the reasoning and opinion of the Fourth District in Orthopedic Specialists I.

Under the standard for second-tier certiorari review established in Custer Medical Center v. United Automobile Insurance Co., 62 So. 3d 1086 (Fla. 2010), and Allstate Insurance Co. v. Kaklamanos, 843 So. 2d 885 (Fla. 2003), we initially concluded that we did not have jurisdiction in this case. With the conflict issue pending before the Supreme Court of Florida, we discerned no violation of a

_____

[2] While the petition in this case was pending, however, a panel of this Court heard a direct appeal regarding the same issue certified to us by the county court based on conflicting circuit court decisions. Fla. Wellness & Rehab. v. Allstate Fire & Cas. Ins. Co., 201 So. 3d 169 (Fla. 3d DCA 2016) ("Fla. Wellness"). This Court concluded that the "shall be subject to" language in the PIP policy was unambiguous and mandatory, certifying conflict with the Fourth District opinion in Orthopedic Specialists I.

3

"clearly established principle of law resulting in a miscarriage of justice." Custer Med. Ctr., 62 So. 3d at 1092. The original dissenting opinion in this case, however, argued against dismissal based on this Court's decision in Florida Wellness, which by then had concluded that the "shall be subject to" term in the PIP policy was unambiguous:

> It is clearly a miscarriage of justice to prevent further review in a manner that causes the identical cases of similarly situated persons in the same court to be decided differently based on conflicting legal interpretations. And this clear miscarriage of justice resulting from the failure to allow review reflects a departure from the most essential legal requirement—equality before the law. No other legal remedy exists to stop this miscarriage of justice here except a writ of certiorari.

Allstate Fire and Cas. Ins. Co. v. Hallandale Open MRI, LLC, 41 Fla. L. Weekly D2208, D2210 (Fla. 3d DCA Sept. 28, 2016) (Logue, J., dissenting). The majority concluded that the Supreme Court of Florida would itself ultimately resolve the conflict in decisions, such that we could not yet hold in this case that the circuit court appellate division had violated a clearly established principle of law resulting in a miscarriage of justice. The pendency of the conflict issue in the Supreme Court distinguished the present case, in the view of the majority, from our own precedent relied upon by Allstate. United Auto Ins. Co. v. Garrido, 22 So. 3d 120 (Fla. 3d DCA 2009) (second-tier certiorari review appropriate to resolve an internal conflict of decisions in the circuit court appellate division).

4

But the Supreme Court of Florida has now resolved the conflict issue in an opinion which turns on a de novo statutory and contractual interpretation, quashing Orthopedic Specialists I and approving Stand-Up MRI. Orthopedic Specialists II, 2017 WL 372092 at *1. Our colleague's earlier dissent in the present case and our own concern regarding the jurisdictional limits of second-tier certiorari as detailed by the Supreme Court of Florida in Custer Medical Center can now be reconciled. The statutory and policy language in question have been definitively analyzed and interpreted for the entire state by its highest court.

Applying the Supreme Court's opinion in Orthopedic Specialists II to the petition in the present case, we conclude that the jurisdictional requirements of Custer Medical Center are satisfied, such that the petition should be granted. From the standpoint of the circuit court appellate division panel, this may seem unwarranted, essentially quashing the panel's opinion based on a subsequently-decided appellate decision that was unavailable to the panel when called upon to rule.

When the appellate division reached its decision in 2015, this Court had not decided the issue and the appellate division followed one of the two conflicting district court opinions. But with that conflict now eliminated by our Supreme Court and a definitive interpretation available to (and binding upon) all Florida

5

courts, we conclude that we should exercise our jurisdiction in conformance with the Supreme Court's decision in Orthopedic Specialists II.

The concurring and dissenting opinions on rehearing which follow address the inconsistencies within the case law affecting our consideration of petitions for second-tier certiorari. On the one hand, our Supreme Court in Custer Medical Center has admonished the district courts to narrowly restrict the application of our jurisdiction regarding second-tier certiorari. But on the other hand, a decision by our Supreme Court on a substantive question of Florida law—one which, as here, finally resolves conflicting opinions on that question at the county, circuit, and district court levels throughout the state—deserves immediate application as to otherwise-final opinions that were continuously challenged at all levels by the petitioner.

The dissent's reliance on Petrysian v. Metropolitan General Insurance Co., 672 So. 2d 562 (Fla. 5th DCA 1996), and Theisen v. Old Republic Insurance Co., 468 So. 2d 434 (Fla. 5th DCA 1985), is misplaced. Those decisions addressed a different question altogether: whether a litigant may obtain post-judgment relief from a final judgment under Florida Rule of Civil Procedure 1.540 "on the ground that a subsequent appellate decision in an unrelated case changed the rule of law upon which the final judgment was based." Theisen, 468 So. 2d at 435.

6

In the present case, a completely different scenario is presented. The county court case became a "test case," regarding the conflict question. The amended final judgment for the medical provider/plaintiff was $407.26, the difference between the amount payable under the statutory formula of section 627.736(5)(a), Florida Statutes (2012), and the "reasonable amount" applicable if the statutory formula was inapplicable. The amended final judgment and county court record include joint stipulations of fact, and they do not reflect any attempt to collect the judgment, liquidate the amount of trial and appellate attorney's fees, or stay the final judgment, during the pendency of the appeal in the circuit court <u>and</u> the petition proceedings here. The further challenges to the small, county court judgment obviously were not based on the sum in controversy in that case, but rather on the thousands of PIP cases affected by the interpretive question issue each year.[3]

The parties thus recognized (whether or not they used the term) that this was a "pipeline"[4] case that would be controlled by the ultimate outcome here or, if

---

[3] For those concerned that an insurer will protract review proceedings through petitions for second-tier certiorari, the fee-shifting consequences of a denial or dismissal of the insurer's petition (section 627.428, Florida Statutes (2016)), should provide significant consolation.

[4] Judge Logue emphasized the appropriateness of such "pipeline" treatment in his original dissent in this case, 41 Fla. L. Weekly at D2210, distinguishing second-tier certiorari consideration from a "second appeal." The pipeline concept is

applicable, in the Supreme Court of Florida. Although they did not await the resolution of the conflict issue in a pending "appeal," it is appropriate to characterize the issue during the pendency of this certiorari case as "pending further review." The interests of medical providers and the interests of PIP insurers alike were served when clarity was provided by the Supreme Court of Florida regarding the issue.

Petition granted.

LOGUE, J., concurs.

---

intended to preserve a party's (usually a criminal defendant's) right to obtain retrospective application of a pending or hoped-for change in decisional law. See Mitchell v. Moore, 786 So. 2d 521, 530-31 and 530 n.8 (Fla. 2001).

Allstate Fire & Casualty Insurance Company vs. Hallandale Open MRI, LLC
Case No. 3D16-38

LOGUE, J., concurring.

I fully concur that a writ of certiorari should issue quashing the decision of the circuit court in its appellate capacity for the reasons stated in the majority opinion. But I write to explain my belief that there is an additional ground to issue the writ of certiorari in this case. The circuit court appellate decision under review expressly and directly conflicts with prior appellate decisions of the same circuit court.[5] I believe a district court of appeal has the discretion to issue a writ of certiorari on second-tier review to resolve such an express and direct conflict between circuit court appellate decisions within its district.

My position can be summarized as follows: (1) a defect in our court system currently prevents the establishment of clearly established principles of law governing a wide array of county court issues; (2) Florida courts historically issued writs of certiorari to review conflicts among lower appellate decisions; (3) issuing a writ of certiorari to resolve a conflict among circuit court decisions is not a second appeal because the review focuses on clarifying the law and not the

_____

[5] Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI LLC, a/a/o Blake, 23 Fla. L. Weekly Supp. 683, 684 (Fla. 11th Cir. Ct. Dec. 7, 2015) (listing conflicting cases and noting "[w]e respectfully disagree with our colleagues").

outcome for the litigants; and (4) the current standard for second-tier certiorari permits review to resolve conflicts in lower appellate decisions.

(1) A defect in our court system prevents the establishment of clearly established principles of law governing a wide array of county court issues.

A properly functioning system of appellate courts will necessarily produce conflicting decisions. And a properly functioning system of appellate courts will necessarily have a method to resolve those conflicts. For example, the Florida Supreme Court resolves conflicts that arise among the district courts of appeal. Art. V, § 3(b)(3), Fla. Const. Of course, the district courts are not the only appellate courts in Florida. The circuit courts serve as appellate courts when reviewing orders of the county courts and local governments. Art. V, § 5(b), Fla. Const.; § 26.012(1), Fla. Stat. (2016). Just as the Florida Supreme Court resolves conflicts among the district courts of appeal, the district courts should similarly resolve conflicts among the circuit courts acting in their appellate capacity. But this is not happening.

It is a well-known, but little-discussed defect in our court system that litigants in the county courts often have their cases decided based upon conflicting circuit court appellate decisions. As occurred in the case below, litigants in the exact same circumstances filing in the exact same county court receive different

10

outcomes based on conflicting case law. The instant case is only a recent example. Twenty years ago, this defect was identified by the Second District in an opinion written by Judge Chris Altenbernd. As a result of this "significant problem within our existing judicial structure[,]" Judge Altenbernd wrote, referring to the confused and conflicting precedents governing county courts, "there may never be 'clearly established principles of law' governing a wide array of county court issues, including PIP issues." Stilson v. Allstate Ins. Co., 692 So. 2d 979, 982 (Fla. 2d DCA 1997). The Supreme Court of Florida agreed and adopted Judge Altenbernd's language in full in Ivey v. Allstate Ins. Co., 774 So. 2d 679, 683 (Fla. 2000) (quoting Stilson, 692 So. 2d at 982).

The idea that "there may never be 'clearly established principles of law' governing a wide array of county court issues" contradicts an essential limitation to judicial discretion—that "[d]ifferent results reached from substantially the same facts comport with neither logic nor reasonableness." Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980). Accepting this idea would constitute a fundamental breakdown in the hierarchal system of our appellate courts, which is designed precisely to prevent different results reached from substantially the same facts. Id.

(2) Florida Courts historically issued writs of certiorari to review conflicts in lower appellate decisions.

11

Not only does the United States Supreme Court routinely issue writs of certiorari to review conflict, but the Florida Supreme Court also historically issued writs of certiorari to review conflict.

In Lake v. Lake, 103 So. 2d 639, 643 (Fla. 1958), for example, the Florida Supreme Court expressly acknowledged that it could issue a writ of certiorari under Article V, §4(2), Florida Constitution (1957) to resolve a conflict on the face of a district court opinion:

> If in a particular case an opinion is rendered by a district court of appeal that prima facie conflicts with a decision of another district court of appeal or of the Supreme Court on the same point of law, the writ of certiorari may issue and, after study, may be discharged, or the decision of the district court of appeal may be quashed or modified to the end that any conflict may be reconciled.

Lake, 103 So. 2d at 643 (emphasis added). See also Foley v. Weaver Drugs, Inc., 177 So. 2d 221, 225 (Fla. 1965) (holding that the Florida Supreme Court "may review by conflict certiorari a per curiam judgment of affirmance without opinion where an examination of the record proper discloses that the legal effect of such per curiam affirmance is to create conflict with a decision of this court or another district court of appeal" (emphasis added)); Gibson v. Maloney, 231 So. 2d 823, 824 (Fla. 1970) ("It is conflict of Decisions, not conflict of Opinions or reasons that supplies jurisdiction for review by certiorari." (Emphasis added)). While these

12

decisions were abrogated by the subsequent amendments to the constitution which removed all certiorari jurisdiction from the Florida Supreme Court,[6] they illustrate how conflict certiorari has been part of our constitutional history.

Some may argue, however, that these cases involved "constitutional certiorari" under constitutional provisions that expressly authorized the Supreme Court to review conflict by certiorari. Art. V, §4(2), Fla. Const. (1957) ("The Supreme Court may review by certiorari any decision of a district court of appeal . . . that is in direct conflict with a decision of another district court of appeal or of the Supreme Court on the same point of law."). This "constitutional certiorari," it may be argued, provides an expanded form of certiorari including a broader type of review than that provided by the "common law certiorari" that the current constitution provides to district courts of appeal.

This argument conflicts with other case law. While there may be differences between "constitutional certiorari" and "common law certiorari," the language in the constitution as of 1957 providing for the issuance of certiorari based on conflict is a type of certiorari that is more <u>restrictive</u> – not more

---

[6] The holdings of these cases were abrogated by the 1980 Amendments to Article V, § 3(b)(3), Florida Constitution. <u>See, e.g.</u>, <u>Jenkins v. State</u>, 385 So. 2d 1356, 1359 (Fla. 1980).

expansive – than common law certiorari. The drafters granted the Florida Supreme Court the discretion to issue the writ – not in general – but only in certain limited circumstances including conflict. This is the only explanation that reconciles the Lake line of cases with the Supreme Court's contemporaneous decision in De Groot v. Sheffield, 95 So. 2d 912, 915 (Fla. 1957). In De Groot, the Supreme Court concluded that a party to an administrative proceeding was entitled to an appeal as a matter of right because the proceeding was quasi-judicial in nature. No statute provided the means for appeal, however, so the Florida Supreme Court held that the proper vehicle to provide the missing plenary appeal was the circuit court's discretion to issue a common law writ of certiorari. Id. at 915-16 ("The writ is available to obtain review in such situations when no other method of appeal is available.").

In subsequent decisions, the Supreme Court made clear that this use of common law certiorari was not subject to the restrictive standard often associated with common law certiorari in other contexts: "[a]lthough termed 'certiorari' review, review at this level is not discretionary but rather is a matter of right and is akin in many respects to a plenary appeal." Fla. Power & Light Co. v. City of Dania, 761 So. 2d 1089, 1092 (Fla. 2000). The Florida Supreme Court subsequently codified the De Groot line of cases in Rule 9.100(c)(2) of the Florida

Rules of Appellate Procedure where it remains today. Indeed, common law certiorari has provided a plenary appeal as of right in other circumstances as well.[7]

If common law certiorari can provide a plenary appeal in the appropriate circumstances, it must necessarily be available to provide a less-than-plenary, discretionary review to resolve conflicts, in appropriate circumstances. Thus, just as common law certiorari could be used to provide the required but missing plenary appeal in De Groot, it can be used to provide a less-than-plenary appeal based on an express conflict when necessary to avoid the current situation in which "there may never be 'clearly established principles of law' governing a wide array of county court issues."

    (3) <u>Issuing a writ of certiorari to resolve a conflict in circuit court appellate decisions is not a second appeal because the review focuses on clarifying the law and not the outcome for the litigants.</u>

The main objection to granting certiorari to review a conflict is that it may allow a "second appeal." See Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d

---

[7] For example, certiorari as an appeal of right is available to obtain first-tier appellate review of a circuit court appellate decision to award attorney's fees or disqualify counsel. See, e.g., City of Miami Beach v. Deutzman, 180 So. 3d 245, 245-46 (Fla. 3d DCA 2015) ("The order was the first ruling on the question of attorneys' fees. Properly viewed, our proceeding is not the second, but rather the first tier of appellate review.").

1086, 1092-93 (Fla. 2010). But as the Supreme Court explained in <u>Lake</u>, the grant of certiorari to resolve a conflict is not a second appeal because the focus is no longer on resolving the dispute between the parties but instead on resolving the conflict in the law.

In <u>Lake</u>, the Supreme Court emphasized the importance of not granting a second appeal, which is both wasteful and abusive: "[w]hen a party wins in the trial court he must be prepared to face his opponent in the appellate court, but if he succeeds there, he should not be compelled the second time to undergo the expense and delay of another review." <u>Lake</u>, 103 So. 2d at 642. A party, the Court concluded, "is not entitled to two appeals." <u>Id.</u> But the Court in <u>Lake</u> further explained that issuing a writ of certiorari to resolve a conflict is not a second appeal because such review "deal[s] with matters of concern beyond the interests of the immediate litigants." <u>Id.</u> When granting certiorari to resolve a conflict between appellate decisions, "at this late day in the progress of the litigation the standardization of decisions on the same point of law will have become primary, the effect upon the immediate litigants consequential." <u>Id.</u> at 643.

Perhaps the most-cited reason why second-tier certiorari cannot be allowed to become a second appeal is that doing so would afford a litigant in the county court (which is a trial court of limited jurisdiction) more appeals than a litigant in

16

the circuit court (which is a trial court of general jurisdiction).[8] But issuing the writ to resolve conflict does not give a county court litigant more appellate opportunities than the circuit court litigant because the circuit court litigant has the right to seek further review if the district court's review of its case leads to an opinion that conflicts with the decision of another district.

The issuance of a writ of certiorari by a district court to resolve conflicts in circuit court appellate decisions is no more the granting of a second appeal than the Supreme Court's exercise of conflict jurisdiction to resolve conflicts among district court decisions. Far from being a usurpation of the district court's jurisdiction and prerogative as a final appellate court, conflict certiorari is a proper and necessary adjunct to it. Thus, granting a petition for writ of certiorari to resolve conflicts does not equate to granting a second appeal.

       (4)  The current standard for second-tier certiorari allows review to resolve conflicts in lower appellate decisions.

---

[8] "The policy behind this rule is simple. . . . If, in cases originating in courts inferior to the circuit courts, another appeal from the circuit court is afforded in the guise of certiorari, then a litigant will have two appeals from the court of limited jurisdiction, while a litigant would be limited to only one appeal in cases originating in the trial court of general jurisdiction." Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 526 n.4 (Fla. 1995); see, e.g., Custer, 62 So. 3d at 1093 ("A more expansive review would also afford a litigant two appeals from a court of limited jurisdiction, while limiting a litigant to only one appeal in cases originating in a trial court of general jurisdiction.").

Finally, I believe the current standard for second-tier certiorari includes discretionary review to resolve express and direct conflicts among circuit court appellate opinions. The standard for second-tier certiorari is whether the circuit court's decision denies procedural due process or departs from the essential requirements of law resulting in a miscarriage of justice. Custer, 62 So. 3d at 1092. When applying this test, the Florida Supreme Court "has repeatedly emphasized that district courts must be allowed a large degree of discretion so that they may judge each case individually." Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 726 (Fla. 2012) (quotation omitted). In fact, for this very reason, the Supreme Court has held that it is impossible to create an exhaustive list of circumstances under which second-tier certiorari should issue. Id.

While a court considering issuing the writ must "not usurp the authority of the trial judge or the role of any other appellate remedy, [it must] preserve the function of this great writ of review as a 'backstop' to correct grievous errors that, for a variety of reasons, are not otherwise effectively subject to review." Custer, 62 So. 3d at 1092 (quoting Haines City Cmty. Dev. V. Heggs, 658 So. 2d 523, 531 n.14). "Thus, the district court's exercise of its discretionary certiorari jurisdiction should 'depend on the court's assessment of the gravity of the error and the

adequacy of other relief.'" Custer, 62 So. 3d at 1092 (quoting Heggs, 658 So. 2d at 531 n.14).

Concerning the gravity of error, it is hard to imagine a more grievous error than to allow identical cases in the same court to be decided differently based upon conflicting appellate decisions. Our entire system of hierarchal appellate courts is designed to prevent this injustice. Such a result constitutes a miscarriage of justice reflecting a departure from the most essential requirement of law—equality before the law. It undermines the credibility of the courts in the eyes of the general public because such conflicting results look at best like whimsy and at worst judicial tyranny. The dramatic and wide-reaching ramifications of the failure to allow review to resolve conflicts and thus by omission to cause identically situated litigants to receive conflicting outcomes is "sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari." Nader, 87 So. 3d at 727 (quotation omitted).

Concerning the adequacy of relief, there is no other suitable method of review. The county court's authority to certify issues of great public importance directly to the district courts of appeal is not adequate. The Second District in Stilson and the Florida Supreme Court in Ivey both acknowledged the existence of the county court's authority in this regard, and they both still concluded that "there

19

may never be 'clearly established principles of law' governing a wide array of county court issues, including PIP issues." Ivey, 774 So. 2d at 683; Stilson, 692 So. 2d at 983. These statements by the Second District and the Florida Supreme Court confirm that the county court's ability to certify is not a solution. Unless one finds acceptable the idea that "there may never be 'clearly established principles of law' governing a wide array of county court issues, including PIP issues," the inescapable conclusion is that county court certification is simply not an adequate remedy for circuit court appellate conflicts.

This conclusion is borne out by experience. While the conflicting legal precedents in the circuit court at issue in this case were ultimately resolved by this court based on a county court certification, the conflict at issue here festered in the circuit court for years, causing identically situated parties who filed or defended

_____

[9] See, e.g., Allstate Ins. Co. v. Gables Ins. Recovery Inc., a/a/o Moran, No. 13-305 AP (Fla. 11th Cir. Ct. May 18, 2016) (policy language not sufficient) (Lederman, Cohen, and Prescott, JJ.); Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI LLC, a/a/o Blake, 23 Fla. L. Weekly Supp. 683 (Fla. 11th Cir. Ct. Dec. 7, 2015) (policy language not sufficient) (Hogan-Scola, Cueto, and Orshan, JJ.); Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI LLC, a/a/o Politesse, 21 Fla. L. Weekly Supp. 989 (Fla. 11th Cir. Ct. June 23, 2014) (policy language sufficient) (Korvick, Bloom, and Walsh, JJ.); Allstate Indem. Co. v. Gables Ins. Recovery, Inc., a/a/o Jimenez, 22 Fla. L. Weekly Supp. 1146 (Fla. 11th Cir. Ct. June 8, 2015) (policy language sufficient) (Bernstein, Hendon, and Manno Schurr, JJ.); Allstate Prop. & Cas. Ins. Co. v. Royal Diagnostic Ctr. Inc., a/a/o Mondy, 21 Fla. L. Weekly Supp. 627 (Fla. 11th Cir. Ct. Apr. 3, 2014) (policy language sufficient) (Smith, Lobree, and Verde, JJ.).

20

suits in the same county court to receive diametrically different outcomes.[9] And that resolution would not have helped the litigants in this case, but for our issuance of the writ. The history of this case and the many related cases show that the county court's authority to certify is not adequate to provide a timely resolution of the conflict.

On reflection, this fact should have been obvious from the beginning. Examination of the Florida Supreme Court's jurisdiction to review district court decisions suggests that the drafters never viewed a court's jurisdiction to review certified questions as an adequate replacement for a court's jurisdiction to resolve conflict. When the drafters removed the Florida Supreme Court's authority to issue writs of certiorari, they provided the Florida Supreme Court both the discretion to review certified issues and, separately, the discretion to review conflicts between the district courts. See Art. V, §§ 3(b)(3), (4), (7), (8), Fla. Const. The drafters would not have provided both avenues for review if they believed review by certification adequately addressed the need for review of conflicts.

The drafters clearly believed both certification and conflict jurisdiction were needed to replace the certiorari jurisdiction that they removed from the Florida Supreme Court. And history proved them right. In calendar year 2015, for example, the Florida Supreme Court reviewed 33 cases certified as having great

21

public importance but 864 cases based on conflict.[10] As these figures show, the Supreme Court considers over 25 times more cases under conflict jurisdiction than certification jurisdiction. These court statistics indicate that the discretion to review certified questions is not an adequate replacement for the discretion to review conflicts. Thus, it appears counterintuitive to conclude that the drafters, while realizing that certification and conflict jurisdiction were needed to replace certiorari jurisdiction, somehow intended to remove conflict jurisdiction when they left district courts with certiorari review.

For this reason, I do not believe the county court's authority to certify issues of great public importance is adequate to address conflicts in the circuit courts. En banc review by a circuit court is similarly inadequate.[11] Therefore, when considering "the adequacy of other relief," I can only conclude there is no other adequate relief for conflicts among appellate decisions of the circuit courts within a district except issuing the writ.

---

[10] Florida Supreme Court, Supreme Court Monthly/Term/Yearly Statistics for the Period 01/01/2015 – 12/31/2015, http://www.floridasupremecourt.org/pub_info/documents/caseload/2015_Florida_Supreme_Court_Caseload.pdf (last visited March 15, 2017).

[11] To begin with, there is no authorizing rule. More importantly, in most circuits, such a rule would be "be impractical because of the large number of circuit judges that would be involved." State v. Lopez, 633 So. 2d 1150, 1151 (Fla. 5th DCA 1994). Finally, en banc review would not resolve conflicts between circuits in a district.

Thus, based on both "the <u>gravity of the error</u> and the <u>adequacy of other relief</u>[,]" <u>Custer</u>, 62 So. 3d at 1092, a district court has the discretion to issue a writ of certiorari to review a circuit court appellate decision that expressly and directly conflicts with another circuit court in the same district.

Conclusion

The county courts and the circuit courts acting in their appellate capacity deal with issues that touch the lives of the people of Florida in crucial ways. It is imperative that clear precedents be available to the judges and litigants doing this vital work. As judges, we cannot accept a system of appellate review in which "there may never be 'clearly established principles of law' governing a wide array of county court issues." See <u>Ivey</u>, 774 So. 2d at 683. Like judge-made rules of procedure, judge-made interpretations of common law writs "should never be permitted to become so technical, fossilized, and antiquated that they obscure the justice of the cause and lead to results that bring its administration into disrepute." <u>In re Gottschalk's Estate</u>, 196 So. 844, 844 (Fla. 1940).

Rather than resign ourselves to an unacceptable situation, condemn litigants to unequal treatment, and stand by while the prestige and credibility of the courts degrades in the eyes of the public, the courts should develop this judge-made law to serve the needs of the courts, litigants, and people as they have in the past. <u>See,</u>

e.g., <u>De Groot</u>, 95 So. 2d at 915. Because unresolved conflicts in the appellate decisions of the circuit courts create miscarriages of justice and no other adequate remedy exists, the issuance of a writ of certiorari properly serves as the backstop to prevent this sort of grievous error.

SCALES, J., dissenting.

It is hard to disagree with the result of the majority's opinion on rehearing in this case. After all, by granting the petition, the majority has promoted the ideals of fairness and consistency; that is, these parties will be treated just like parties whose disputes arose after the Florida Supreme Court's opinion in <u>Allstate Insurance Co. v. Orthopedic Specialists</u>, No. SC15-2298 (Fla. Jan. 26, 2017).

Florida's county courts have adjudicated numerous PIP reimbursement disputes based on Allstate's policy language. While each litigated policy contained exactly the same language, sometimes Allstate won and sometimes Allstate lost.[12] *From now on*, Allstate will prevail in these disputes under the Florida Supreme Court's opinion in <u>Orthopedic Specialists</u>.

By granting Allstate's petition and issuing the writ, however, the majority has given Allstate the retroactive benefit of this Supreme Court opinion. In my view, this marks an unprecedented exercise of this Court's certiorari jurisdiction and conflicts with the Florida Supreme Court's certiorari dictates in <u>Custer Medical Center v. United Auto Insurance Co.</u>, 62 So. 3d 1086 (Fla. 2010).

---

[12] Allstate lost this particular case in county court on April 8, 2014. Allstate lost its appeal to circuit court on December 7, 2015.

Florida's retroactivity jurisprudence is well settled. When, as in <u>Orthopedic Specialists</u>, the Supreme Court does not make its adjudication retroactive, parties whose cases were decided prior to the Supreme Court's resolution of the conflict are neither entitled to the benefit, nor saddled with the detriment, of the Supreme Court's determination. <u>See</u> <u>Petrysian v. Metro. Gen. Ins. Co.</u>, 672 So. 2d 562, 563 (Fla. 5th DCA 1996) ("A change in the applicable rule of law resulting from a later appellate decision in an unrelated case is not a ground to vacate a final order. We regret that appellant was frustrated by the timing of the supreme court's decisions, but we cannot grant relief from the application of the law as it existed at the time of her appeal.") (citation omitted).  Admittedly, this circumstance might seem unfair to folks who would have won had the higher court ruled sooner, or if their particular appellate tribunal had more presciently predicted how the higher court ultimately would rule.

But this unfairness – or dissonance – is simply not error subject to a second-tier certiorari writ. In fact, it is not error at all. As the majority concedes, the circuit court in this case did not depart from the essential requirements of law.  <u>See</u> majority opinion at 3-4. Employing a de novo standard of review, the circuit court's appellate division relied upon appropriate precedent to affirm the trial court's construction of Allstate's insurance policy. The appellate court's only

"error" was failing to accurately predict which of two persuasive, yet competing, precedents the Florida Supreme Court ultimately would adopt. Divergent results happen when a state has multiple, independent appellate districts, and each district has multiple appellate divisions.

In my view, the majority greatly expands the purview of the writ in order to ensure that Allstate gains the benefit of a Supreme Court case decided almost three years after Allstate's case was adjudicated, and over a year after Allstate lost its appeal. While a party with a *pending* appeal is generally entitled to the benefit of a change of decisional authority, Santana v. Fla. Dep't of Fin. Servs., 61 So. 3d 1262 (Fla. 3d DCA 2011), a party such as Allstate, whose appeal is *final*, is not entitled to the benefit of a post-appeal change in decisional authority. Petrysian, 672 So. 2d at 563; Theisen v. Old Republic Ins. Co., 468 So. 2d 434, 435 (Fla. 5th DCA 1985). This Court's granting discretionary review and issuing a second-tier certiorari writ to give Allstate the benefit of Orthopedic Specialists is tantamount to giving Allstate an unauthorized "second appeal." See Stilson v. Allstate Ins. Co., 692 So. 2d 979, 982 (Fla. 2d DCA 1997) ("It is well-established that certiorari should not be used as a vehicle for a second appeal in a typical case tried in county court."). The majority gives Allstate this benefit despite Custer Medical Center's clear directive that second tier-certiorari review is severely limited, and despite the

appellate tribunal not having in any way departed from the essential requirements of law.[13]

I respectfully dissent and would not grant certiorari review. As well articulated by the majority and concurring opinions in this case, however, I recognize the importance of consistency within Florida's appellate districts. Therefore, I would certify to the Florida Supreme Court, as a question of great public importance, whether second-tier certiorari is appropriate to review (i) intra-circuit and intra-district conflicts, and (ii) lower court appellate decisions in conflict with later determinations of higher courts.

---

[13] "[A] district court should exercise its discretion to grant review *only* when the lower tribunal has violated a clearly established principle of law resulting in a miscarriage of justice." Custer Med. Ctr., 62 So. 3d at 1092 (citations omitted) (emphasis added).

28